# In the United States Court of Appeals for the Fifth Circuit

JARROD STRINGER; BENJAMIN HERNANDEZ; JOHN WOODS,
*Plaintiffs-Appellees*,

*v.*

ROLANDO PABLOS, in His Official Capacity as the Texas Secretary
of State; STEVEN C. MCCRAW, in His Official Capacity as the
Director of the Texas Department of Public Safety,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## BRIEF FOR APPELLANTS

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

SCOTT A. KELLER
Solicitor General

MATTHEW H. FREDERICK
Deputy Solicitor General
matthew.frederick@oag.texas.gov

BETH KLUSMANN
Assistant Solicitor General

Counsel for Appellants

# Certificate of Interested Persons

Jarrod Stringer; Benjamin Hernandez; John Woods,
*Plaintiffs-Appellees*,

*v.*

Rolando Pablos, in His Official Capacity as the Texas Secretary of State; Steven C. McCraw, in His Official Capacity as the Director of the Texas Department of Public Safety,
*Defendants-Appellants.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Defendants-Appellants:**
- Rolando Pablos,[1] *in his official capacity as Texas Secretary of State*
- Steven C. McCraw, *in his official capacity as Director of the Texas Department of Public Safety*

**Counsel for Defendants-Appellants:**
Ken Paxton
Jeffrey C. Mateer
Scott A. Keller
Matthew H. Frederick (lead counsel)
Beth Klusmann
Anne Marie Mackin
Esteban S.M. Soto
Office of the Attorney General

---

[1] Rolando Pablos succeeded Carlos H. Cascos as Texas's Secretary of State and was substituted by rule. *See* Fed. R. Civ. P. 25(d).

**Plaintiffs-Appellees:**
- Jarrod Stringer
- Benjamin Hernandez
- John Woods

**Counsel for Plaintiffs-Appellees:**
Peter A. Kraus
Charles S. Siegel
Caitlyn E. Silhan
Rachel A. Gross
Waters & Kraus, LLP

Mimi M.D. Marziani
Rebecca Harrison Stevens
Hani Mirza
Cassandra Champion
Ryan V. Cox
The Texas Civil Rights Project

**Former Plaintiff:**
- Totysa Watkins

/s/ Matthew H. Frederick

MATTHEW H. FREDERICK
*Counsel of Record for Defendants-Appellants*

## Statement Regarding Oral Argument

Oral argument may be beneficial in this case. Plaintiffs' failure to demonstrate standing requires only the straightforward application of this Court's precedent. But the underlying merits present issues of first impression, so oral argument may be useful in explaining the relevant laws and standards.

# Table of Contents

Page

Certificate of Interested Persons ................................................................i

Statement Regarding Oral Argument ..................................................iii

Table of Authorities ...............................................................................vi

Introduction ..............................................................................................1

Statement of Jurisdiction .......................................................................2

Issues Presented ......................................................................................3

Statement of the Case .............................................................................4

   I.  The National Voter Registration Act ..........................................4

   II.  Texas Voter-Registration Procedures .......................................6

   III. Online Transactions .....................................................................8

   IV. Procedural History .......................................................................9

Summary of the Argument...................................................................14

Standard of Review ...............................................................................16

Argument.................................................................................................17

   I.  Plaintiffs Lack Standing to Seek Retrospective or Prospective Relief. ..........................................................................17

      A.  Plaintiffs cannot establish standing based on past injuries that were admittedly redressed before they filed suit...............................19

      B.  Plaintiffs failed to establish standing to seek prospective injunctive relief because they did not identify a concrete threat of future injury. ......................20

         1.  Plaintiffs have not shown a substantial risk of experiencing a prospective violation of the law. ................................................. 21

         2.  Past exposure to unlawful conduct does not establish a concrete threat of future injury...................................24

      C.  Even if Plaintiffs once had standing, their claims would be moot...............................................................26

   II.  Plaintiffs Have Not Proven a Violation of the Equal Protection Clause..............................................................28

    A.  The district court should not have ruled on Plaintiffs' constitutional claim once it found liability under the NVRA. ............29

    B.  Texas's written-signature requirement does not violate the Equal Protection Clause. ....................................................29

III.  Plaintiffs Have Not Proven a Violation of the NVRA.............................34

    A.  Plaintiffs have not proven a violation of § 20504(a)..........................34

    B.  Plaintiffs have not proven a violation of § 20504(d). ........................36

    C.  The remaining NVRA violations depend on the finding that Defendants violated §§ 20504(a) and (d). ..........................................37

IV.  The Injunction Is Overbroad, and Many Provisions Have No Legal Foundation.....................................................................................39

    A.  The injunction should be limited to curing the specific NVRA violations that injured Plaintiffs..........................................39

    B.  The district court's injunction goes far beyond what is warranted in this case. .......................................................................41

        1.  The district court's general injunction against violating the NVRA is impermissibly vague and overbroad............................42

        2.  The district court's injunction to launch a public-education and marketing campaign lacks any legal basis.............................43

        3.  The district court lacks authority to mandate the details of Texas's online system. ..............................................................44

        4.  The district court had no authority to subject Defendants to monitoring by Plaintiffs' counsel. ...............................................45

        5.  The district court's exercise of continuing jurisdiction is unwarranted and contrary to the NVRA. ....................................46

Conclusion.............................................................................................................48

Certificate of Service............................................................................................49

Certificate of Compliance ....................................................................................49

# Table of Authorities

Page(s)

**Cases:**

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) ...................................................................30

*Arcia v. Florida Secretary of State,*
    772 F.3d 1335 (11th Cir. 2014) ..............................................22

*Ashcroft v. Mattis,*
    431 U.S. 171 (1977) (per curiam) ..........................................25

*Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar,*
    56 F.3d 791 (7th Cir. 1995) .............................40, 41, 44, 46

*Burdick v. Tukushi,*
    504 U.S. 428 (1992) ...................................................................30

*Califano v. Yamaski,*
    442 U.S. 682 (1979) ...................................................................40

*Charles H. Wesley Education Foundation, Inc. v. Cox,*
    408 F.3d 1349 (11th Cir. 2005) ....................................... 22, 27

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)............................................................ 20, 21

*Crawford v. Marion Cty. Election Bd.,*
    553 U.S. 181 (2008)...................................................................32

*Ctr. for Individual Freedom v. Carmouche,*
    449 F.3d 655 (5th Cir. 2006) .......................................... 27, 28

*Deutsch v. Annis Enterprises, Inc,*
    882 F.3d 169 (5th Cir. 2018) ..................................................25

*Doe v. Tangipahoa Parish Sch. Bd.,*
    494 F.3d 494 (5th Cir. 2007) (en banc) ............................. 19

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ...................................................................20

*Escambia Cty. v. McMillan,*
    466 U.S. 48 (1984) (per curiam)............................................29

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ...................................................................26

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990) ............................................................ 18-19

*Golden v. Zwickler*,
394 U.S. 103 (1969) ........................................................ 25

*Grace v. Am. Cent. Ins. Co.*,
109 U.S. 278 (1883) ........................................................ 19

*Horne v. Flores*,
557 U.S. 433 (2009) ........................................................ 44

*Husted v. A. Philip Randolph Inst.*,
138 S. Ct. 1833 (2018) ............................................... 31, 32

*John Doe #1 v. Veneman*,
380 F.3d 807 (5th Cir. 2004) ........................................ 41

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ........................................................ 24

*Lion Health Servs., Inc. v. Sebelius*,
635 F.3d 693 (5th Cir. 2011) ........................................ 40

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......................................................... 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................ 18

*Machete Prods., L.L.C. v. Page*,
809 F.3d 281 (5th Cir. 2015) .................................... 20, 26

*Mansfield C. & L.M.R. Co. v. Swan*,
111 U.S. 379 (1884) ........................................................ 19

*Moore v. Bryant*,
853 F.3d 245 (5th Cir. 2017) .................................... 18, 20

*Munro v. Socialist Workers Party*,
479 U.S. 189 (1986) ........................................................ 32

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .................................................. 24, 25

*OCA-Greater Hous. v. Tex.*,
867 F.3d 604 (5th Cir. 2017) ........................................ 42

*Ohio Democratic Party v. Husted*,
834 F.3d 620 (6th Cir. 2016) ........................................ 32

*Peaches Entm't Corp. v. Entm't Repertoire Assocs.*,
62 F.3d 690 (5th Cir. 1995) .......................................... 17

*Peacock v. Thomas*,
516 U.S. 349 (1996) ........................................................ 46

*Rogers v. Bromac Title Servs., L.L.C.*,
    755 F.3d 347 (5th Cir. 2014) ........................................ 16-17

*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016) (per curiam) ............................ 17, 40, 43

*Scott v. Schedler*,
    771 F.3d 831, 835 (5th Cir. 2014) .................................... 35

*Short v. Brown*,
    893 F.3d 671 (9th Cir. 2018) ......................................... 32

*Soc'y of Separationists, Inc. v. Herman*,
    959 F.2d 1283 (5th Cir. 1992) ........................................ 26

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................... 18, 26

*In re Stewart*,
    647 F.3d 553 (5th Cir. 2011) ......................................... 42

*Storer v. Brown*,
    415 U.S. 724 (1974) .................................................. 27

*Stringer v. Pablos*,
    No. 18-50428 (5th Cir. May 31, 2018) ................................. 14

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) ............................................... 20

*Tripp v. Scholz*,
    872 F.3d 857 (7th Cir. 2017) ......................................... 32

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) (en banc) ............................... 29, 44

*Voting for Am., Inc. v. Steen*,
    732 F.3d 382 (5th Cir. 2013) ......................................... 30, 32

*Voting Rights Coal. v. Wilson*,
    60 F.3d 1411 (9th Cir. 1995) ......................................... 40, 41

*Warth v. Seldin*,
    422 U.S. 490 (1975) .................................................. 18

*Weinstein v. Bradford*,
    423 U.S. 147 (1975) (per curiam) ..................................... 27

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) .................................................. 21, 24

## Constitutional Provisions, Statutes and Rules

U.S. Const. art. I, § 4, cl. 1 ........................................................ 4, 33, 40

37 Tex. Admin. Code

    § 15.21.................................................................................7

    § 15.59(c) ..........................................................................22

28 U.S.C.

    § 1291 ..................................................................................2

    § 1331..................................................................................2

52 U.S.C.

    § 20501(b) ...........................................................................4

    § 20501(b)(2) .....................................................................47

    § 20501-11...........................................................................4

    § 20503 ..............................................................................13

    § 20503(a)............................................................................4

    § 20503(a)(1) .......................................................10, 22, 37

    § 20504 ..............................................................................13

    § 20504(a)..........................................................................20

    § 20504(a) ..........................................................................34

    § 20504(a)(1) ........................................... 4, 10, 35, 36

    § 20504(a)(2) ...........................................................10, 36

    § 20504(c) ................................................................10, 31, 38

    § 20504(c)(2)(B)(ii) ...........................................................38

    § 20504(c)(2)(C)(iii) .............................................35, 36, 38

    § 20504(d) .......................................................10, 20, 21, 37

    § 20504(e) ...........................................................................10

    § 20504(e) .............................................................................7

    § 20507 ..............................................................................13

    § 20507(a) .............................................................................7

    § 20507(a)(1)(A) ............................................................ 5, 10

    § 20510(a)..............................................................................5

    § 20510(b) ...........................................................................19

    § 20510(b)(1) ..............................................................5, 34,47

    § 20510(b)(2) .............................................................5, 34, 44

Tex. Elec. Code

 § 12.001 ...................................................................... 6

 § 13.002(b) ........................................................... 6, 30

 § 13.071 ...................................................................... 6

 § 13.101 ...................................................................... 6

 § 15.021(a) .......................................................... 6, 30

 § 15.021(d) ................................................................. 6

 § 20.062 ...................................................................... 7

 § 20.066(a) ................................................................. 7

 § 65.056(a) ................................................................. 6

Tex. Transp. Code

 § 521.142 .................................................................... 7

 § 521.271(a)(1) ......................................................... 22

Fed. R. App. P. 4(a)(1)(A) ................................................. 3

Fed. R. Civ. P.

 25(d) ........................................................................... i

 56(a) .......................................................................... 17

 65(d)(1)(C) ............................................................... 41

**Other Authorities**

*Online Voter Registration*, National Conference of State Legislatures (Dec. 6, 2017), http://www.ncsl.org/research/elections-and-campaigns/electronic-or-online-voter-registration.aspx (collecting laws) ....................................................................... 33

Tex. H.B. 953, 84th Leg., R.S., (2015) ............................. 33

Tex. S.B. 385, 84th Leg., R.S. (2015) .............................. 33

Voter Empowerment Act of 2012, H.R. 5799/S. 3608, 112th Cong. (2012) .......................................................................... 33

Voter Empowerment Act of 2015, H.R. 12, 114th Cong. (2015) ........................... 33

## Introduction

Each of the plaintiffs had successfully registered to vote before they filed this lawsuit. Their complaint nevertheless seeks prospective injunctive relief against the Secretary of State and the Director of the Department of Public Safety, alleging that Plaintiffs were injured in the past by their inability to register to vote online when they updated their driver's-license addresses. But there is no evidence at all that Plaintiffs themselves would interact with the State's online driver's-license renewal system in the future by either moving to a new county or registering to vote, so Plaintiffs cannot establish a concrete injury necessary to support standing under Article III—given that they are currently registered to vote and were registered to vote at the time they filed suit. As a result, Plaintiffs never had standing even when this lawsuit was filed, and the district court never had subject-matter jurisdiction.

Even if the district court had Article III jurisdiction, the terms of its injunction far exceed its equitable authority. The district court found that the National Voter Registration Act (NVRA) and the Equal Protection Clause require Defendants to treat online driver's-license-renewal and change-of-address requests as simultaneous voter-registration applications and process them accordingly. But the district court did not order the State to do only that, which would have been a remedy sufficient to cure any alleged legal violations. Instead, the district court went much further, imposing a byzantine set of obligations that have no basis in the NVRA or the Constitution but effectively transfer management of online driver's-license transactions to the district court and Plaintiffs' counsel. Among other provisions, the district court's injunction requires Defendants to create a multi-year, multimedia

statewide public-education and marketing campaign, subject to approval by Plaintiffs' counsel, to inform the public about how the judgment "changes the voter registration process"—with no consideration of the cost or logistics of creating such a campaign from scratch. Despite Congress's decision to leave the details of NVRA compliance with the States, the district court's injunction imposes detailed compliance provisions, including the precise wording to be used on the State's website. And the injunction compels Defendants to submit to wholly unnecessary monitoring and reporting provisions empowering *Plaintiffs' counsel* to commandeer this online voter-registration process for the next 3 years.

The district court had no jurisdiction to entertain Plaintiffs' claims because Plaintiffs did not have Article III standing at any time during this lawsuit. The district court had no basis to order relief because Plaintiffs failed to prove a violation of the NVRA. But having found an NVRA violation, the district court had no basis to rule on Plaintiffs' equal-protection claim. And even if the Plaintiffs had proven a legal violation, the district court had no authority to enter an injunction that far exceeded the scope of that alleged violation and subjected state officials to burdens that have no basis in the NVRA or the Constitution.

## STATEMENT OF JURISDICTION

Because Plaintiffs' claims arise under a federal statute and the U.S. Constitution, ROA.22-40, subject-matter jurisdiction rests on 28 U.S.C. § 1331. But the district court lacked subject-matter jurisdiction because Plaintiffs did not have standing to sue, and their claims therefore did not present a live case or controversy as required by Article III. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

The district court signed the final judgment on May 18, 2018, ROA.3352-58, and Defendants timely filed their notice of appeal on May 21, 2018, ROA.3359-60; *see* Fed. R. App. P. 4(a)(1)(A).

## Issues Presented

1. Did the district court err in finding that Plaintiffs have Article III standing to seek prospective injunctive relief regarding changes to their voter-registration information through the State's online driver's-license change-of-address system when they were already registered to vote when they filed suit and where there was no evidence that Plaintiffs would use the State's online system in the future?

2. Did the district court err in finding a constitutional violation under the Equal Protection Clause when it had already found a statutory NVRA violation based on the same underlying conduct and when Texas's voter-registration system does not unconstitutionally burden the right to vote?

3. Did the district court err in finding a violation of the NVRA when the NVRA does not explicitly contemplate online voter-registration transactions or require States to accept electronic signatures?

4. Did the district court abuse its discretion by issuing a permanent injunction that is overbroad, requires Defendants to spend public funds on activities not contemplated by the NVRA, and gives Plaintiffs indefinite authority to bring enforcement actions in the district court without providing the notice required by the NVRA?

## I. The National Voter Registration Act

The U.S. Constitution guarantees to the States the right to choose the time, place, and manner of elections, absent federal law to the contrary. U.S. Const. art. I, § 4, cl. 1. Acting pursuant to this authority, Congress passed the National Voter Registration Act (NVRA) in 1993. 52 U.S.C. §§ 20501-11. The NVRA was intended to increase the number of citizens eligible to vote while protecting the integrity of the electoral process. *Id.* § 20501(b).

The NVRA provides that "each State shall establish procedures to register to vote in elections for Federal office . . . by application made simultaneously with an application for a motor vehicle driver's license pursuant to section 20504 of this title." *Id.* § 20503(a). Section 20504 describes, in detail, when States are required to treat driver's-license transactions as voter-registration transactions. Under § 20504(a)(1),

> Each State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application.

Relatedly, § 20504(c) generally prohibits States from requiring duplicate information on the voter-registration portion of a driver's-license application. Subsection (c)(2)(C)(iii) does, however, provide that "[t]he voter-registration application portion of an application for a State motor vehicle driver's license . . . shall include a statement that . . . requires the signature of the applicant, under penalty of perjury."

When a driver changes the address on his driver's license, § 20504(d) provides that the change-of-address form "shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes."

There are several other provisions of the NVRA that are triggered by the receipt of a voter-registration application by a motor vehicle authority, such as the Texas Department of Public Safety (DPS). Section 20504(e) requires a completed voter-registration portion of a driver's-license application to be transmitted to the appropriate State election official within ten days, or five days if the election is imminent. Similarly, a State is required to ensure that eligible applicants are registered within 30 days of the day the voter-registration application is submitted to the State motor vehicle authority. *Id.* § 20507(a)(1)(A).

The NVRA is enforceable by the U.S. Attorney General, *id.* § 20510(a), but it also creates a private right of action for individuals "aggrieved" by violations of the NVRA. An aggrieved person must first provide written notice of the violation to the chief election official of the State. *Id.* § 20510(b)(1). The State then has 90 days to correct the violation.[2] *Id.* § 20510(b)(2). If the violation is not corrected, the aggrieved person may bring a civil action for declaratory or injunctive relief "with respect to the violation." *Id.*

---

[2] A shorter 20-day period is provided if the violation occurs within 120 days of an upcoming federal election. *Id.* § 20510(b)(2).

## II. Texas Voter-Registration Procedures

The Texas Legislature has adopted detailed statutes governing voter registration. Key to this case is that, in Texas, "[a] registration application must be in writing and signed by the applicant." Tex. Elec. Code § 13.002(b); *see also id.* § 65.056(a) (allowing the affidavit on a provisional ballot to serve as a voter-registration application if it contains the necessary information). Likewise, any change to voter-registration information must also be in writing and signed. *Id.* § 15.021(a). The signatures may then be used for any investigations of fraud or identity theft, consideration of absentee ballots, or if there are any problems with electronically captured signatures. ROA.2298, 2512, 2522-23. The only exception to the signature requirement is when a voter moves within a single county. In that case, Texas law permits the voter to change his voter-registration address online. Tex. Elec. Code § 15.021(d). If, however, the voter moves between counties, he must fill out a voter-registration form, sign it, and submit it in his new county of registration. *Id.* § 15.021(a); *see also* ROA.3267-68. This is because Texas uses a county-based voter-registration system: the voter registrar in each county is the county tax assessor-collector, the county elections administrator, or the county clerk. Tex. Elec. Code § 12.001. The registrar for each county is tasked with accepting and rejecting voter-registration applications. *Id.* § 13.071. And the registrar must maintain files of voter-registration applications. *Id.* § 13.101.

In accordance with the NVRA, Texas has integrated its driver's-license transactions with its voter-registration transactions with respect to paper applications. Paper applications for driver's licenses, renewal of driver's licenses, and changes of

address on driver's licenses all contain boxes for the individual to check "Yes" or "No" regarding whether he wants to register to vote or change his registration address. ROA.2269-76; *see also* Tex. Elec. Code § 20.062. These forms also require the signature of the applicant or registrant. ROA.2269-76. Thus, when the driver's-license application or change-of-address is made in person or by mail and accompanied by a physical signature, it also serves as a voter-registration application or change of address. [3]

An original application for a Texas driver's license must be made in person, *see* Tex. Transp. Code § 521.142, and the applicant must provide his signature on the paper application, 37 Tex. Admin. Code § 15.21. The applicant must also provide his signature on an electronic screen that captures the image of the signature. ROA.2525-26. The electronically captured signature is sent to the Secretary of State for voter-registration purposes. Tex. Elec. Code § 20.066(a); ROA.2269-73. The previously captured signature is also sent to the Secretary of State when an individual subsequently registers to vote when renewing his license or changes his address by mail. ROA.3263-64.

Each weekday, DPS electronically transfers to the Secretary of State information about each applicant who is of voting age, a United States citizen, and affirmatively

---

[3] The voter-registration application takes additional time, however, because the information must be transmitted to the appropriate state election official to be processed. The NVRA recognizes this fact by granting the State a number of days to complete the process. 52 U.S.C. §§ 20504(e), 20507(a). It is thus incorrect to state that the voter registration or change of address must be "simultaneous."

answers the voter-registration question. ROA.3254, 3259. The signature that is transferred to the Secretary of State is the electronic signature captured during the individual's last in-person transaction in a driver's-license office. ROA.3026, 3065. Plaintiffs agree that Texas's administration of in-person and mail-in driver's-license and voter-registration transactions complies with the NVRA. ROA.2194.

## III. Online Transactions

The allegations in this case arise from online renewal of driver's licenses and online changes of address (what this brief will also refer to as the "DPS system"). Texas permits individuals to renew their driver's licenses or change their address through the DPS system. ROA.2359. To renew a driver's license, an individual must enter his driver's-license number, date of birth, last four digits of his social security number, and the audit number on his driver's license. ROA.3254. The same system is used to change a driver's-license address online. ROA.3047, 3106, 3259. In addition to the above information, the individual changing his address must include his home and mailing address. ROA.3254-55. The DPS system then uses the signature electronically captured during that customer's last visit to a DPS field office to create the new driver's license. ROA.3255.

When an individual uses the DPS system to renew his license or change his address, the website asks the individual "Do you want to request a voter application?" ROA.2362. Next to the box marked "Yes," it states, "This does not register you to vote." ROA.2362. Instead, the DPS system explains, "You will receive a link to a voter application on your receipt page." ROA.2362.

When the individual completes his online transaction, a notice in red appears at the top of the page stating, "You are not registered to vote until you have filled out the online application, printed it, and mailed it to your local County Voter Registrar." ROA.2365. The notice also contains a link to download a voter-registration application. ROA.2365.[4] A voter is not registered unless and until he completes the voter-registration application, signs it, and mails it to the correct registrar.

## IV. Procedural History

Plaintiffs Jarrod Stringer, Benjamin Hernandez, and John Woods are three individual Texas residents who, between 2013 and 2015, moved between counties in Texas. ROA.32, 2374 (Hernandez moved from Ector County to Dallas County in 2013); ROA.32, 2395 (Stringer moved from Tarrant County to Bexar County in 2014); ROA.33, 2417 (Woods moved from Travis County to Harris County in 2015).[5] All of them changed their driver's-license addresses through the online DPS system. ROA.3254. All three were also registered to vote at their previous Texas addresses. ROA.1604, 2373, 2416. But none of them printed out and mailed in a voter-registration form as instructed by the DPS system. ROA.3255. When they attempted to vote in the next election, they were told that they were not registered in the counties to which they had moved. ROA.2380, 2399-400, 2418-20.

---

[4] A prior version of this system contained similar instructions, stating that "Selecting 'Yes' **does not** register you to vote," explaining that a link would be provided, and emphasizing that "[y]ou are NOT registered to vote." ROA.2351-52.

[5] The parties stipulated to the dismissal of a fourth plaintiff, Totysa Watkins, with prejudice during the district court proceedings. ROA.1641-43.

Through a series of letters, Plaintiffs' counsel notified Defendants that they believed the failure to treat Plaintiffs' online changes of address as effecting a voter-registration change of address violated the NVRA. ROA.2233, 2242, 2245. None of the letters, however, included an allegation that Plaintiffs were prohibited from registering to vote while renewing their driver's licenses. ROA.2233, 2242, 2245. Defendants offered to assist Plaintiffs in updating their voter-registration information. ROA.3256. By the end of 2015, all three Plaintiffs were registered to vote at their current (new) addresses. ROA.2547, 2568, 2582.[6]

Even though all three Plaintiffs were registered to vote at their current addresses by the end of 2015, Plaintiffs nevertheless filed suit in March 2016. ROA.22-40. Plaintiffs alleged that (1) the failure to treat online driver's-license renewal applications as voter-registration applications violated multiple provisions of the NVRA, ROA.35-36 (citing 52 U.S.C. §§ 20503(a)(1), 20504(a)(1)-(2), (c), (e), and 20507(a)(1)(A)); (2) the failure to treat online changes of address for driver's licenses as updates to voter-registration addresses violated multiple provisions of the NVRA, ROA.37-38 (citing 52 U.S.C. §§ 20503(a)(1), 20504(c)-(e), and 20507(a)(1)(A); and (3) the failure to treat online driver's-license transactions as voter-registration transactions subjected Plaintiffs to arbitrary treatment in violation of the Equal Protection Clause, ROA.35. Defendants are the Texas Secretary of State and the Director of DPS. ROA.26.

---

[6] The timing of each registration is available in a sealed exhibit that may be found at ROA.3446-51 (sealed) using the "EDR" (Effective Date of Registration) field.

Defendants filed a motion to dismiss, raising jurisdictional arguments (standing and mootness), as well as arguments on the merits. ROA.342-52. The district court denied Defendants' motion ten months later. ROA.1554-74 (R.E. Tab 3). Following discovery, the parties filed cross-motions for summary judgment. In addition to arguments on the merits, Defendants' motion continued to assert that Plaintiffs lacked standing and that their claims were moot. ROA.2545-52. Defendants' motion also included evidence that all three Plaintiffs were already registered to vote at their current addresses at the time suit was filed. ROA.2547, 2568, 2582.

In response, Plaintiffs did not deny that they were registered to vote at their current addresses and were registered at those addresses at the time they filed suit. And, although each Plaintiff claimed they would use DPS's online system in the future, if permitted to do so, ROA.2736-44, Plaintiffs offered no evidence that they would (1) move to a new county in the future, potentially triggering application of § 20504(d) (changing address), or (2) need to register to vote in the future, potentially triggering § 20504(a) (registering to vote while renewing license), given that they were already registered to vote.

In March 2018, the district court granted Plaintiffs' summary-judgment motion and denied Defendants' motion in a single-page order that indicated the court would follow up with a written opinion. ROA.3248 (R.E. Tab 4). In May 2018, the district court issued a written opinion that continued to reject the standing and mootness arguments raised by Defendants. ROA.3277-87 (R.E. Tab 5). The court then found that Defendants' conduct violated the NVRA because Defendants did not permit simultaneous voter-registration applications when the DPS transaction occurred

online. ROA.3289-95. The court reasoned that the State could use the electronically captured signatures already on file to permit online voter registration and changes of address for driver's-license-renewal or change-of-address requests.[7] ROA.3289-95. The court also determined that the Equal Protection Clause required Defendants to do exactly the same thing—allow simultaneous voter-registration applications for individuals who use the online DPS system to renew their driver's-license or change their driver's-license address. ROA.3305-10.

The district court then ordered the parties to submit a "proposed form of judgment." ROA.3311. Because the parties were unable to agree on a single proposed judgment, Plaintiffs filed their proposed judgment, ROA.3312-23, and Defendants filed objections, ROA.3334-42.

On May 18, 2018, the district court signed a final judgment, adopting almost all of the proposals submitted by Plaintiffs, which included a sweeping permanent injunction and deadlines for compliance in as little as 14 days for some aspects of the judgment.[8] ROA.3352-58. The injunction was not tailored to the violations found by the district court, nor did it simply require the State to treat online driver's-license-

---

[7] Many of the district court's record citations used to describe the State's system were to documents that were not part of the summary-judgment record, but were instead part of Plaintiffs' pretrial filing of deposition designations. *See, e.g.*, ROA.3259-71 (referring to Docket No. 94).

[8] Although the final judgment was signed on May 18, ROA.3352-58, it was not entered in the CM/ECF system and distributed to the parties until May 21, ROA.20, further shortening Defendants' deadlines.

renewal and change-of-address requests as sufficient voter-registration applications. Rather, the district court:

1. Enjoined Defendants from violating any portion of 52 U.S.C. §§ 20503, 20504, and 20507, ROA.3354;

2. Required compliance within 45 days, and specified the exact language that must be on the DPS website, ROA.3354-55;

3. Directed DPS to transmit voter-registration information to the Secretary of State, even when the applicant indicates he does not wish to register to vote, ROA.3355-56;

4. Required Defendants to submit to Plaintiffs' counsel, within 14 days, a plan for a public-education campaign using at least three media venues to inform the public how the judgment changes Texas procedures (including a 2-year plan to promote online voter registration through the DPS website), and to implement the plan within 45 days, ROA.3356; [9]

5. Required Defendants—the Director of DPS and the Texas Secretary of State—to submit affidavits of compliance within 45 days, ROA.3357;

6. Required Defendants to submit to Plaintiffs' counsel for three years an annual report regarding "compliance efforts," the number of online driver's-license transactions resulting in voter-registration applications, copies of all NVRA procedures and training materials, investigations related to online

---

[9] If the parties could not agree on a plan, they were ordered to submit their separate proposals to the court within 25 days. ROA.3356.

transactions, and all customer complaints related to online voter-registration transactions, ROA.3357-58;

7. Required Defendants to conduct monthly quality control tests for the next year and submit the results to Plaintiffs' counsel every three months, ROA.3358; and

8. Retained continuing jurisdiction for two years and granted Plaintiffs the authority to initiate an enforcement action any time thereafter, ROA.3358.

Defendants appealed, ROA.3359-60 (R.E. Tab 2), and moved for a stay pending appeal in district court, ROA.3361-84. Defendants then moved for a stay in this Court on May 25, 2018, given the pending compliance deadline of June 1 for submitting a public-education plan. A panel of this Court issued a stay pending appeal on May 31. Order, *Stringer v. Pablos*, No. 18-50428 (5th Cir. May 31, 2018).

## Summary of the Argument

The district court lacked subject-matter jurisdiction because Plaintiffs never had standing. Plaintiffs alleged that they were injured when they were unable to update their voter-registration information at the same time that they updated their driver's-license information online. But by the time they filed this lawsuit, each of the Plaintiffs had successfully registered to vote. Plaintiffs' past injury did not give them standing to seek prospective relief, and they provided no evidence that they would interact with the State's online driver's-license renewal system at any point in the future. Plaintiffs therefore failed to prove a concrete injury necessary to establish standing under Article III.

Even if it had subject-matter jurisdiction, the district court erred by ruling on Plaintiffs' equal-protection claim, which rested on the same set of facts as Plaintiffs' NVRA claim. Once the district court found liability under the NVRA, it should have avoided an unnecessary ruling on the constitutional claim. The district court's ruling was also wrong on the merits. The challenged voter-registration provisions impose a minimal burden, which is more than offset by the State's substantial interest in maintaining accurate voting rolls and preventing voter-registration fraud.

The district court also erred when it found a violation of the NVRA. Plaintiffs rely primarily on § 20504(a), which applies to driver's-license applications, and § 20504(d), which applies to changes of address in driver's-license records. Plaintiffs claim that Defendants violated the NVRA because their online change of address in the DPS's driver's-license records did not simultaneously update their addresses in the Secretary of State's voter-registration files. But because Plaintiffs had moved to new counties, they were required to provide a signed voter-registration form to the county clerk. The NVRA does not forbid Defendants to require a written signature on voter-registration applications. In fact, the NVRA expressly provides that States must require a signature under penalty of perjury on the voter-registration portion of a driver's-license application or renewal form. But nothing in the text of the NVRA requires States to accept electronic signatures or otherwise provide for online voting registration. And there is no reason to believe that Congress intended to impose those requirements given that it passed the NVRA in 1993, before widespread use of the Internet.

Even if the district court had jurisdiction, and even if it had properly found liability, its permanent injunction would be vastly overbroad and without legal support. Instead of entering an injunction that required Defendants to ensure that an online driver's-license renewal or change of address would also register an individual to vote or update their voter-registration address—a remedy sufficient to cure the violations found by the district court—the district court entered an impermissible catch-all injunction forbidding Defendants from violating several sections of the NVRA. The district court also ordered Defendants to launch a two-year statewide multimedia campaign to educate the public about its judgment—a requirement that has no basis in the NVRA or the Constitution and no rational relation to Plaintiffs' alleged injury. The district court eliminated Defendants' discretion to comply with the NVRA when it mandated specific details and procedures, including the precise text to be included on the DPS website. Worse, the district court gave Plaintiffs' counsel sweeping authority to enforce the injunction, requiring Defendants to submit to monitoring by Plaintiffs' counsel for the next three years, to submit regular reports, and to provide them with data and voting materials. In the same vein, the district court retained jurisdiction for two years and gave Plaintiffs indefinite authority to "initiate an enforcement action" without providing the notice required by the NVRA. The district court abused its discretion when it ordered injunctive relief that was unnecessary to remedy the purported violations, unsupported by law, or both.

## Standard of Review

The Court reviews a district court's grant of summary judgment de novo, applying the same standard the district court did. *Rogers v. Bromac Title Servs., L.L.C.*, 755

F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court's grant of a permanent injunction is reviewed for abuse of discretion. *Peaches Entm't Corp. v. Entm't Repertoire Assocs.*, 62 F.3d 690, 693 (5th Cir. 1995). "The review of a permanent injunction is segmented, such that [the Court] will review the district court's findings of fact under the clearly erroneous standard, and the conclusions of law under the *de novo* standard." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "The district court abuses its discretion if it (1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction, (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief." *Peaches Entm't Corp.*, 62 F.3d at 693.

## ARGUMENT

### I. Plaintiffs Lack Standing to Seek Retrospective or Prospective Relief.

All three Plaintiffs were registered to vote when they filed this lawsuit. The district court therefore lacked subject-matter jurisdiction because Plaintiffs did not have standing under Article III.

To satisfy Article III's standing requirements, a plaintiff must show that (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Moore v. Bryant*, 853 F.3d 245, 248-49 (5th Cir. 2017). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) (footnote omitted). Further, standing "in no way depends on the merits of the . . . contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Plaintiffs have never had Article III standing to bring this lawsuit because their only alleged injuries occurred in the past; those past injuries were redressed before Plaintiffs filed their complaint; and there is no evidence that Plaintiffs face a substantial risk of future harm to support prospective injunctive relief. Plaintiffs claim they are harmed by the failure of Texas to treat certain online driver's-license transactions as voter-registration transactions. ROA.22-40. But Plaintiffs were registered to vote at their current addresses when they filed this lawsuit, so any past injury related to their voter registration had already been redressed.

Plaintiffs presented no evidence that they will encounter the allegedly unlawful online DPS system in the future by moving to a new county or registering to vote when renewing their driver's licenses, making their mere assertions of hypothetical future harm too conjectural to support standing. The elements of constitutional standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561; *FW/PBS, Inc. v. City of Dallas*, 493 U.S.

215, 231 (1990) ("It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' . . . but rather 'must affirmatively appear in the record.'" (quoting *Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883); *Mansfield C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))); *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 498 (5th Cir. 2007) (en banc) ("Mere assumption would not satisfy the plaintiffs' burden to prove an element of their cause of action at this stage of the litigation and it cannot satisfy their burden to prove standing."). Without any evidence that they will again experience a violation of the NVRA or the Equal Protection Clause through the online DPS system, they have failed to demonstrate an injury-in-fact. Consequently, the district court lacked jurisdiction over their lawsuit.

### A. Plaintiffs cannot establish standing based on past injuries that were admittedly redressed before they filed suit.

The only concrete harm identified by Plaintiffs occurred in the past: they allege that they were unable to vote after they moved to new counties because they had not been automatically registered to vote in their new counties of residence when they changed their driver's-license address online through DPS. ROA.32-33, 2380, 2399-400, 2418-20. That harm had already been addressed before this lawsuit began: Plaintiffs do not dispute that they were registered to vote at their new addresses when they filed this lawsuit in 2016. ROA.2547, 2568, 2582.

Plaintiffs' alleged past injury provides no basis for retrospective relief. The NVRA permits only declaratory and injunctive relief. 52 U.S.C. § 20510(b). And

sovereign immunity bars Plaintiffs from seeking anything other than prospective injunctive relief against State officials for alleged violations of the NVRA or the Equal Protection Clause. *See Edelman v. Jordan*, 415 U.S. 651, 676-77 (1974); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015). Unsurprisingly, Plaintiffs do not seek any relief for this alleged injury, ROA.38-39, nor did the district court purport to order any, ROA.3352-58. Without an existing harm or the possibility of retrospective relief, Plaintiffs' alleged past injury cannot provide standing.

### B. Plaintiffs failed to establish standing to seek prospective injunctive relief because they did not identify a concrete threat of future injury.

Plaintiffs requested, and the district court granted, prospective injunctive relief. ROA.38-39, 3352-58. But the basis for this relief was a hypothetical future claim— the possibility that Plaintiffs might encounter the online DPS system at an undetermined point in the future by (1) moving to a new county and changing addresses, 52 U.S.C. § 20504(d); or (2) becoming unregistered to vote and then seeking to re-register when renewing their driver's licenses, *id.* § 20504(a). But Plaintiffs presented no evidence that either scenario is likely to occur. The only claim of future injury is "conjectural or hypothetical" and therefore insufficient to establish Article III jurisdiction. *Moore*, 853 F.3d at 248.

To obtain prospective injunctive relief, a plaintiff has the burden to establish standing by putting on evidence that the "threatened injury is 'certainly impending'" or that there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l*

*USA*, 568 U.S. 398, 409, 414 n.5 (2013)). The Supreme Court has "repeatedly reiterated" that "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (internal quotation marks omitted); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("That injury, we have emphasized repeatedly, must be concrete in both a qualitative and temporal sense.").

### 1. Plaintiffs have not shown a substantial risk of experiencing a prospective violation of the law.

Plaintiffs failed to establish standing because the record contains no evidence that they face a substantial risk of future injury resulting from alleged noncompliance with the NVRA. The district court found that "[t]he statutory violation and requisite injury occurred at the moment [Plaintiffs were] denied a simultaneous voter registration application."[10] ROA.3286. And each Plaintiff asserts that he intends to "continue transacting online with Department of Public Safety ('DPS') in the future whenever I am required to renew or change the address on my driver's license and am eligible to do so." ROA.2736-44. But there is no evidence that any Plaintiff will need to use the online DPS system in the future to change his voting information.

No Plaintiff put on evidence of an intent to move to a new county, so no Plaintiff has shown a substantial risk that he will experience a violation of 52 U.S.C. § 20504(d) by being unable to change his voter-registration address online. Likewise,

---

[10] In any event, that supposed past violation could not give Plaintiffs standing to challenge § 20504(a), which applies only to driver's-license applications and renewals, because Plaintiffs did not allege that they attempted to register to vote while applying for or renewing a driver's license. *See infra* p. 34-35.

no Plaintiff put on evidence that he will become unregistered to vote and need to re-register when renewing his driver's license under § 20504(a). ROA.3256 (Plaintiffs are currently registered to vote). Even so, driver's licenses must be renewed only every six years, Tex. Transp. Code § 521.271(a)(1), and every other renewal must be in person, *see* 37 Tex. Admin. Code § 15.59(c) (prohibiting alternative renewals for two consecutive periods). So it is unclear when, in the next twelve years, Plaintiffs might renew their driver's licenses online. Thus, there is no evidence of a substantial risk that Plaintiffs will experience a violation of § 20504(a), which applies only when an individual seeks to register to vote while renewing his driver's license.[11]

The remainder of Plaintiffs' NVRA and equal-protection claims all stem from the same hypothetical injury—the inability to register to vote online when renewing a driver's license or changing their driver's-license address online. First, § 20503 does not create an independent claim, but requires only that voter-registration applications be made simultaneously with driver's-license transactions "pursuant to section 20504." 52 U.S.C. § 20503(a)(1). So without a violation of § 20504, there can be no violation of § 20503. And for the reasons just described above, *see supra* pp. 21-22, there is insufficient evidence that Plaintiffs will experience a violation of § 20504,

---

[11] The absence of a substantial threat of injury distinguishes cases involving plaintiffs who remained unable to vote at the time they filed suit, *see Charles H. Wesley Education Foundation, Inc. v. Cox*, 408 F.3d 1349, 1351, 1352 & n.3 (11th Cir. 2005), or who faced a "realistic probability," due to their status as naturalized citizens, that they would again be removed from the voting rolls under a program designed to remove non-citizens, *see Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1340-41 (11th Cir. 2014).

meaning that there is also insufficient evidence that Plaintiffs will experience a violation of § 20503.

Second, § 20504(c) prohibits requiring duplicative information in a voter-registration application when it is part of a driver's-license application (as required by § 20504(a)), so Plaintiffs will not be harmed unless they seek to register to vote while renewing their driver's license—which they have not shown they will do. And finally, § 20504(e) and § 20507(a)(1)(A) set deadlines for the transmission and processing of voter-registration applications received by motor vehicle authorities. The district court held that these sections were violated when Defendants did not treat Plaintiffs' online driver's-license transactions as updating their voter-registration records. ROA.3298-99. But if Plaintiffs have no concrete plans to engage in voter-registration transactions online—by registering to vote while renewing their driver's license or moving to a new county—then they have not shown a substantial risk that Defendants will not timely process their voter-registration applications.

There is also no evidence that Plaintiffs will experience any future equal-protection violation. Plaintiffs' equal-protection claim is virtually identical to their NVRA claim, as the district court held that the inability to register to vote or change a registration address online while submitting an online driver's-license-renewal or change-of-address request unconstitutionally burdens the right to vote. ROA.3305-10. But, again, there is no evidence that any Plaintiff will need to register to vote or change his address to a new county online in the future. Without those events, Plaintiffs are not at substantial risk of experiencing an alleged violation of the Equal Protection Clause.

The district court highlighted Plaintiffs' lack of standing when it erroneously allowed Plaintiffs to rely on hypothetical injuries to third parties. ROA.1559 (reasoning that "[o]ther individuals will certainly be affected"); ROA.3282 (referring to "Plaintiffs (or others)" when discussing continuing harm). But Plaintiffs cannot assert the rights of others without showing a "close relationship" with particular individuals who will encounter DPS's online system or that those individuals are somehow hindered from bringing suit themselves. *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004); *see also Whitmore*, 495 U.S. at 155-56 ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."). The district court cited no such evidence, and none appears in the record. Plaintiffs cannot base their standing to sue on hypothetical future injuries to third parties any more than they can rely on hypothetical future injuries to themselves.

### 2. Past exposure to unlawful conduct does not establish a concrete threat of future injury.

Nor can Plaintiffs' exposure to allegedly unlawful behavior in the past establish a concrete threat of injury for standing purposes. The Supreme Court has consistently held that past exposure to allegedly unlawful behavior does not provide standing to seek future injunctive relief. In *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), the Court held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." The plaintiffs in *O'Shea* alleged that government officials were applying criminal statutes more harshly to African-Americans and sought injunctive relief. *Id.* at 490-92. But none of the plaintiffs was currently

serving a criminal sentence, and the Supreme Court was unwilling to speculate that the plaintiffs might commit a crime in the future or be charged with a crime, resulting in discriminatory treatment. *Id.* at 496-97. Similarly, the Court held in *Los Angeles v. Lyons* that a plaintiff lacked standing to challenge a city police department's use of chokeholds when it was speculative whether he would ever be subjected to a choke-hold again. 461 U.S. 95, 105-07 (1983); *see also, e.g.*, *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 n.2 (1977) (per curiam) (no standing to challenge use-of-force policy on basis that plaintiff's son might one day appear to present a danger to police); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (no standing to challenge pamphleteering law related to congressional elections when plaintiff had accepted a position on the State Supreme Court and was unlikely to ever run for Congress again).

This Court has likewise held that a past injury does not create a concrete threat of injury sufficient to confer standing to seek prospective injunctive relief. In *Deutsch v. Annis Enterprises, Inc.*, decided earlier this year, a man who used a wheelchair alleged violations of the Americans with Disabilities Act when he encountered several physical obstacles while entering a women's hair salon. 882 F.3d 169, 172 (5th Cir. 2018) (per curiam). The Court dismissed his lawsuit for lack of standing because he failed to demonstrate that he ever intended to visit the salon again. *Id.* at 174. As the Court stated, "[m]erely having suffered an injury in the past is not enough; the plaintiff must show a 'real or immediate threat that the plaintiff will be wronged again.'" *Id.* at 173 (quoting *Lyons*, 461 U.S. at 111).

This Court reached the same conclusion in *Machete Productions*: "In the context of prospective injunctive and declaratory relief, past exposure to illegal conduct, by

itself, does not evince a present case or controversy and thus cannot establish standing." 809 F.3d at 288. There, the Court dismissed for lack of standing a First Amendment claim that the State had unlawfully denied a film grant. *Id.* The Court concluded there was insufficient evidence that the plaintiff intended to produce another film in the *Machete* franchise or that it had any outstanding grant requests. *Id.*; *accord Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1286 (5th Cir. 1992) ("It is beyond our mandate to issue prospective relief every time a state actor arguably infringes a constitutional right.").

## C. Even if Plaintiffs once had standing, their claims would be moot.

The district court also analyzed Plaintiffs' claims for mootness, erroneously invoking the "capable of repetition yet evading review" exception. ROA.3280-83. But mootness is not the proper jurisdictional doctrine to apply because Plaintiffs never had standing to begin with when this lawsuit was filed in 2016: "[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see Steel Co.*, 523 U.S. at 109 ("[T]he mootness exception for disputes capable of repetition yet evading review . . . will not revive a dispute which became moot before the action commenced"). Because Plaintiffs lacked standing when they filed suit, no exception to mootness can revive their claims.

Regardless, the capable-of-repetition exception would not warrant an exception to mootness in this case even if the doctrine somehow applied. The "capable of repetition, yet evading review" exception can be invoked if two elements are met: "(1)

the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). As to the second element, the same facts that demonstrate Plaintiffs lack standing to seek prospective injunctive relief also demonstrate that they will not be "subjected to the same action again." *See supra* pp. 20-26.

Disputes about Texas's online driver's-license system will not "evade review" because the injury will not disappear before the claim can be litigated. Any Texan who renewed his driver's license or changed his address online, but was unable to register to vote and remains unregistered to vote, has standing to sue. As in *Charles H. Wesley*, those individuals have an ongoing injury that can be remedied by injunctive relief. 408 F.3d at 1351. That injury—the inability to register—is not so inherently short-lived that it cannot be fully litigated before its expiration.

The district court drew a false parallel to claims that were mooted by the election cycle, effectively (and erroneously) concluding that all voting-related cases are subject to the capable-of-repetition exception to mootness. ROA.3282-83. It relied, for example, on cases applying the exception to claims against Louisiana campaign-finance laws, *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661-62 (5th Cir. 2006), and a California ballot-access law, *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974). The capable-of-repetition exception fits those circumstances because the time period before an election is fixed and often short. As a result, the lifespan of a claim that expires with the passage of an election is necessarily limited and shorter

than the lifespan of litigation. *See, e.g.*, *Carmouche*, 449 F.3d at 661 (explaining that the exception applies to controversies involving "election laws, including campaign finance regulations," because "full litigation can *never* be completed before the precise controversy (a particular election) has run its course" (emphasis added)).

That is not the case here: Any mootness of Plaintiffs' claims was not caused by an election, but by the fact that Plaintiffs became registered to vote. Plaintiffs' successful registration—unlike an election—was not inevitable. And there is no reason to believe that other possible plaintiffs with actual live disputes (or even these same Plaintiffs if they actually were to move to a new county or become unregistered in the future) will lack sufficient time to litigate these issues. Thus, although this case should not have been analyzed through the mootness doctrine, the capable-of-repetition exception to mootness would not rescue Plaintiffs' claims even if the doctrine somehow applied.

## II. Plaintiffs Have Not Proven a Violation of the Equal Protection Clause.

Plaintiffs' equal-protection claim is simply an attempt to cloak their statutory NVRA claim in constitutional garb. If the district court correctly found a statutory NVRA violation, then it should never should have reached the Plaintiffs' substantially similar equal-protection claim—as constitutional avoidance would require the court to avoid this issue given that the statutory NVRA claim would have provided Plaintiffs all they could possibly be entitled to. In all events, the Equal Protection Clause does not require Defendants to "provide voter registration applications simultaneously with online driver's license renewal and change of address transactions"—even if the NVRA were found to require this. ROA.3305.

## A. The district court should not have ruled on Plaintiffs' constitutional claim once it found liability under the NVRA.

Once it concluded that Defendants' conduct violated the NVRA, the district court should not have reached the constitutional question whether Texas's voter-registration procedures violate the Equal Protection Clause. It is a "well established principle governing the prudent exercise of this [c]ourt's jurisdiction that normally th[is c]ourt will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Veasey v. Abbott*, 830 F.3d 216, 265 (5th Cir. 2016) (en banc) (alteration in original) (quoting *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)). Plaintiffs' NVRA claim is virtually identical to their equal-protection claim—both assert that Texas is obligated to treat certain online DPS transactions as voter-registration transactions. ROA.2203 (describing NVRA and equal-protection claim in same terms). In this case, a finding that Defendants' conduct is unconstitutional adds nothing to the State's legal obligations or to Plaintiffs' available remedies. Should the Court affirm the district court's liability finding regarding the statutory NVRA claims, it should still reverse the equal-protection finding.

## B. Texas's written-signature requirement does not violate the Equal Protection Clause.

If the Court concludes that Plaintiffs have not established an NVRA claim, however, it must consider whether Plaintiffs have proven an equal-protection claim. They have not.

1. The district court applied the *Anderson/Burdick* test to Plaintiffs' claim that Texas must treat certain online DPS transactions as voter-registration transactions.

ROA.2208 (referring to *Burdick v. Tukushi*, 504 U.S. 428, 434 (1992), and *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Texas has a written-signature requirement for voter registration and changes to voter registration that prevents online voter-registration transactions. *See* Tex. Elec. Code §§ 13.002(b), 15.021(a). Therefore, although it failed to say so explicitly, the district court essentially held that Texas's written-signature requirement is unconstitutional as applied to individuals who engage in certain online transactions with DPS. But Texas's signature requirement does not impose an unconstitutional burden on the right to vote.

The *Anderson/Burdick* test requires the Court to "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013) (quoting *Anderson*, 460 U.S. at 789). Then, the Court "must identify and evaluate the precise interest put forward by the State as justifications for the burden imposed by its rule." *Id.* (quoting *Anderson*, 460 U.S. at 789). Finally, the Court weighs the "character and magnitude of the asserted injury" against the "precise interests put forward by the State," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* at 387-88 (quoting *Burdick*, 504 U.S. at 434). When a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the state's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S. at 788.

2.    Turning first to the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments" at issue, Plaintiffs assert

that individuals who choose to use DPS's online system are burdened because—unlike individuals who choose to visit DPS in person or mail in an application—online users cannot simply check a box to become registered to vote or change their registration address. ROA.3307-08. Instead, individuals using DPS's online system must print out a voter-registration form, fill it out, sign it, and mail it, which satisfies Texas's written-signature requirement. But Plaintiffs have not explained how being treated like everyone else—supplying a written signature on voter-registration applications—is a burden on their equal-protection rights. If Plaintiffs desire the simplicity of checking a single box, they may fill out a paper registration form. Stated differently, providing multiple options for individuals to register to vote is not a violation of the Equal Protection Clause even if Plaintiffs consider some options to be less convenient than others.

The precise interest of the State in requiring written signatures, which necessarily forecloses online registration, is in maintaining accurate voting rolls and combatting fraud. It cannot be debated that States have an interest in requiring a signature from voters. Even the NVRA recognizes that voter-registration applications must be signed under penalty of perjury. 52 U.S.C. § 20504(c). And, as was testified to in this case, Texas can use the written signatures in cases of fraud, identity theft, consideration of absentee ballots, and when there are problems with electronically captured signatures. ROA.2298, 2512, 2522-23; *see also Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1838 (2018) ("It has been estimated that 24 million voter reg-

istrations in the United States—about one in eight—are either invalid or significantly inaccurate. Pew Center on the States, Election Initiatives Issue Brief (Feb. 2012).").

This Court has also recognized that preventing voter-registration fraud is a permissible state interest that warrants some limits on voter registration. *Voting for Am.*, 732 F.3d at 394-95. It is not necessary for Defendants to produce specific evidence of fraud to justify preventative measures. *Id.* (citing *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality op.)); *see Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) (finding "general interest in increasing voter turnout" sufficient to justify experimental use of mail-in ballots in specific counties); *Tripp v. Scholz*, 872 F.3d 857, 866 (7th Cir. 2017) (finding "speculative concern" sufficient to justify ballot-access limitation); *Ohio Democratic Party v. Husted*, 834 F.3d 620, 632 (6th Cir. 2016) (holding that when a regulation is "not unduly burdensome," a State does not have to "*prove*" that evidence supports its interest; the court may defer to the legislature's findings); *cf. Husted*, 138 S. Ct. at 1847 (cautioning that compliance with the NVRA did not require the State to make "a wise policy judgment" or "have some particular quantum of evidence of a change of residence" before taking steps to verify a voter's address); *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986) ("Legislatures . . . should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively . . . ."). A State may act to prevent potential fraud, as "[a]ny corruption in voter registration affects a state's paramount obligation to ensure the integrity of the voting process and threatens the public's right to democratic government." *Voting for Am.*, 732 F.3d at 394.

Balancing Plaintiffs' equal-protection rights against the State's interests reveals no unconstitutional burden on the right to vote. The State has provided several options to register to vote, some of which Plaintiffs find less convenient, but all of which satisfy the State's written-signature requirement. Whether to permit online registration is a quintessentially state-law function, absent a preemptive federal law requiring it. U.S. Const. art. I, § 4, cl. 1. While many States have adopted online registration, not all have.[12] Congress and the Texas Legislature have also considered mandating online voter registration but, to date, neither legislative body has required it. Voter Empowerment Act of 2015, H.R. 12, 114th Cong. (2015); Voter Empowerment Act of 2012, H.R. 5799/S. 3608, 112th Cong. (2012); Tex. H.B. 953, 84th Leg., R.S., (2015); Tex. S.B. 385, 84th Leg., R.S. (2015). The Equal Protection Clause does not require online voter registration either.

There is also no logical stopping place for Plaintiffs' argument. Individuals across Texas interact online with various state agencies that may have copies of their signatures on file. This does not create a constitutional right for all of those individuals to demand that those agencies also provide for simultaneous online voter registration with every online transaction. Plaintiffs' claim is limited only to driver's licenses—demonstrating that it is simply a statutory NVRA claim dressed up as a con-

---

[12] *Online Voter Registration*, National Conference of State Legislatures (Dec. 6, 2017), http://www.ncsl.org/research/elections-and-campaigns/electronic-or-online-voter-registration.aspx (collecting laws).

stitutional claim. The Equal Protection Clause does not require what Plaintiffs demand, and their right to vote is not unconstitutionally burdened by Texas's written-signature requirement for voter registration.

## III. Plaintiffs Have Not Proven a Violation of the NVRA.

Plaintiffs claim, and the district court found, that Defendants violated multiple provisions of the NVRA. But Defendants' conduct does not violate the specific language of the NVRA.

### A. Plaintiffs have not proven a violation of § 20504(a).

1. As an initial matter, because Plaintiffs failed to comply with the statutory prerequisites to suit, they may not bring a challenge under § 20504(a) of the NVRA. As explained above, to bring a claim under the NVRA, an individual must (1) be aggrieved by a violation of the NVRA, and (2) provide written notice of the violation to the chief election official of the State. 52 U.S.C. § 20510(b)(1). If the violation is not corrected within 90 days of the State official receiving the written notice, an individual may then bring suit "with respect to the violation." *Id.* § 20510(b)(2).

Here, Plaintiffs were never aggrieved by a violation of § 20504(a) because that subsection deals only with driver's-license applications and renewals. *Id.* § 20504(a) (applying to "motor vehicle driver's license application[s] (including any renewal application[s])"). Neither Plaintiffs' complaint nor the evidence submitted at the summary-judgment stage includes any facts indicating that Plaintiffs attempted to

register to vote while renewing their drivers' licenses online. Instead, the facts concern only alleged violations of § 20504(d)—changing a voter-registration address online. ROA.32-33.

Moreover, Plaintiffs did not provide written notices to the Secretary of State regarding any alleged violation of § 20504(a). Instead, Plaintiffs' written notices refer only to facts that might be actionable under § 20504(d). ROA.2233 (Hernandez written notice referring only to change of address); ROA.2242 (Stringer written notice referring only to change of address); ROA.2245 (Wood written notice referring only to change of address). Because Plaintiffs were not aggrieved by a violation of § 20504(a) and did not provide Defendants written notice that they were aggrieved by § 20504(a), they may not bring claims regarding § 20504(a). *See, e.g.*, *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014) (finding that failure to provide proper notice under the NVRA deprived plaintiff of standing).

2.  Moving to the merits, the district court held that Texas is violating § 20504(a) by not allowing online voter registration when an individual renews his driver's license online. But this claim is defeated by the plain language of the statute. A driver's-license renewal must permit voter registration "*unless the applicant fails to sign the voter registration application.*" 52 U.S.C. § 20504(a)(1) (emphasis added). And the NVRA expressly requires that "[t]he voter registration application portion of an application for a State motor vehicle driver's license," which includes any renewal request, "shall include a statement that . . . requires the signature of the applicant, under penalty of perjury." *Id.* § 20504(c)(2)(C)(iii). The State cannot obtain an actual written signature in an online transaction, and nothing in the statutory text

forbids the State to collect the necessary signature by providing the "voter registration application portion" of the transaction on paper.

Much of the district court's reasoning is about what the State *could* do—namely, use an applicant's electronically captured signature to complete the online transaction, ROA.3302-04—but its conclusion does not fit the statutory text. The NVRA does not require that the State accept electronic signatures related to different documents (here, the driver's-license application, which also required a separate physical signature) in lieu of a signature on the voter-registration application. The plain language suggests just the opposite—the statute expressly requires not only that the voter-registration application be signed, but that the voter-registration portion of any driver's-license application or renewal require a signature under penalty of perjury. 52 U.S.C. § 20504(a)(1), (c)(2)(C)(iii). Nothing in the text compels the States to accept electronic signatures, and given that the NVRA was enacted in 1993, before the ubiquity of the Internet, it is likely that Congress envisioned what Texas requires—pen and paper.

## B. Plaintiffs have not proven a violation of § 20504(d).

The district court ruled that § 20504(d) is violated when an online change-of-address transaction through DPS does not simultaneously change a voter's address in the Secretary of State's voter-registration records. ROA.3293-95. But this claim too is not supported by the text of the statute, which plainly permits—and in fact requires—a signature on the voter-registration portion of a driver's-license application or renewal form. *See* 52 U.S.C. §§ 20504(a)(2), (c)(2)(C)(iii). The district court effectively held that a driver's-license change-of-address form, unlike an application

or renewal, must function as a voter-registration application even if the applicant does not provide a signature. But given that the NVRA explicitly requires a separate signature for a driver's-license application to function as a voter-registration application, there is no basis to infer that Congress intended a mere change-of-address form to have the same effect with no signature at all.

The NVRA was adopted in 1993, when the use of the internet for such transactions was likely not contemplated. Subsection (d)'s requirement that an individual be able to "state[] on the form" that the change of address is not for voter-registration purposes presents difficulty when the form in question consists of specific fields on an internet application. *Id.* § 20504(d). Moreover, subsection (d) does not purport to preempt any state law that would require a signature on change-of-address forms. Texas's solution—providing a link to a written application that will comply with state law after explaining that the applicant cannot register to vote online—is a reasonable attempt to synthesize state and federal law in a situation not previously contemplated by Congress.

### C. The remaining NVRA violations depend on the finding that Defendants violated §§ 20504(a) and (d).

The remaining NVRA violations found by the district court are all derivative of the above two statutory claims. Section 20503's requirement of simultaneous registration "pursuant to section 20504" is not an additional requirement, but simply incorporates the terms of § 20504. *Id.* § 20503(a)(1). Thus, if § 20504 is not violated, neither is § 20503.

Similarly, § 20504(c) prohibits requiring certain duplicate information on the "voter registration application portion of an application for a State motor vehicle driver's license." ROA.3296-98. But if sections 20504(a) and (d) permit Defendants to require a written signature on a change-of-address form for voter registration, then some of the same information provided for an online driver's-license transaction will obviously be "necessary" in the separately mailed voter-registration form to "enable State election officials to assess the eligibility of the applicant and to administer voter registration." 52 U.S.C. § 20504(c)(2)(B)(ii); *cf. id.* § 20504(c)(2)(C)(iii) (providing that the "voter registration application portion . . . shall include a statement that . . . requires the signature of the applicant, under penalty of perjury").

Finally, § 20504(e) and § 20507(a)(1)(A) place time limits on DPS's obligation to transmit voter-registration applications and the Secretary of State's obligation to process them. The district court's conclusion that Defendants were violating these provisions is premised on the court's earlier finding that the State must treat online driver's-license transactions as voter-registration transactions—triggering the start of the time limits. ROA.3298-99. But, if the Court concludes that Defendants have not violated § 20504(a) or (d), then there is no violation of these two statutes, either, as no voter-registration information will be submitted online, and the deadlines to process that information will never be triggered.

In sum, if Defendants have not violated § 20504(a) and (d), then there is no basis to find that Defendants have violated any other provision of the NVRA.

# IV. The Injunction Is Overbroad, and Many Provisions Have No Legal Foundation.

Even if the district court had subject-matter jurisdiction, and even if its judgment of liability on Plaintiffs' NVRA claim were correct, the district court's injunction is overbroad and unsupported. Instead of granting a remedy that fixed the alleged NVRA violation of not being able to use online driver's-license-renewal and change-of-address requests as sufficient for voter registration, the district court's injunction went far beyond what was needed to grant relief to cure these three individual Plaintiffs' alleged injuries. Assuming arguendo that Plaintiffs are entitled to some relief, there is no legal basis for any remedy beyond an order to correct the alleged unlawful behavior.

## A. The injunction should be limited to curing the specific NVRA violations that injured Plaintiffs.

The district court found that Defendants violated the NVRA by failing to ensure that an online driver's-license renewal or change of address in the DPS system would result in simultaneous voter registration or an update of voter-registration information in the Secretary of State's records. That liability finding should have set the permissible scope of injunctive relief—to ensure that an online driver's-license renewal or change of address would also register an individual to vote or update their voter-registration address. But the district court went much further: it spelled out minute details of compliance, including the specific language to be used on the DPS website; it required Defendants to create a 2-year statewide multimedia campaign to educate the public about the district court's ruling; it gave Plaintiffs' counsel oversight of Defendants' conduct for several years; it retained jurisdiction for two years;

and it gave Plaintiffs indefinite authority to bring enforcement actions at any time without complying with the NVRA's notice requirements. ROA.3352-58. The district court's findings do not warrant any of these overbroad injunctive provisions, rendering them an abuse of discretion. *See, e.g.*, *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." (quoting *Califano v. Yamaski*, 442 U.S. 682, 702 (1979))).

The Constitution gives States the authority to regulate their own voter-registration processes to the extent those procedures are not mandated by Congress. U.S. Const. art. I, § 4, cl. 1. Accordingly, this Court has cautioned that an NVRA injunction "may not encompass more conduct than was requested or exceed the legal basis of the lawsuit." *Scott*, 826 F.3d at 214. There, the Court instructed the district court to "make plain that the injunction's scope is limited to [the defendant]'s enforcement of the NVRA" with respect to the violations shown. *Id.*

The Seventh and Ninth Circuits agree with this Court: An NVRA injunction must accord an "adequate sensitivity to the principle of federalism." *Voting Rights Coal. v. Wilson*, 60 F.3d 1411, 1416 (9th Cir. 1995); *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 798 (7th Cir. 1995). The Seventh Circuit sua sponte struck a portion of a district court's judgment that went beyond a "simple injunction" preventing the NVRA violation. *Edgar*, 56 F.3d at 796-98. Even though the language used in the district court's order was similar to that found in the NVRA, the Seventh Circuit found the differences harmful and, in some cases, "well beyond" the NVRA. *Id.* at 797-98. As the Seventh Circuit recognized, "federal judicial

40

decrees that bristle with interpretive difficulties and invite protracted federal judicial supervision of functions that the Constitution assigns to state and local government are to be reserved for extreme cases of demonstrated noncompliance with milder measures. They are last resorts, not first." *Id.* at 798. The Ninth Circuit, likewise, has warned that NVRA injunctions should not be overbroad—by "direct[ing] the district court on remand to impose no burdens on the state not authorized by the [NVRA] which would impair the State of California's retained power to conduct its state elections as it sees fit." *Wilson*, 60 F.3d at 1416.

Permanent injunctions must also comply with Federal Rule of Civil Procedure 65, which requires that they "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). This Court has interpreted that requirement to mean that a "district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order" otherwise the injunction may be "overbroad or vague." *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

## B. The district court's injunction goes far beyond what is warranted in this case.

Many provisions of the district court's order demonstrate a clear abuse of discretion, as they go far beyond simply ordering Defendants to accept online driver's-license-renewal and change-of-address requests as sufficient voter-registration applications—the bases upon which the district court found NVRA and equal-protection violations. And many of the injunctive provisions, such as the public-education campaign and the multi-year monitoring by Plaintiffs' counsel, are not remotely calculated to redress injuries suffered by the individual Plaintiffs (whose injuries have

already been redressed at any rate). *See In re Stewart*, 647 F.3d 553, 558 (5th Cir. 2011) (finding no jurisdiction to issue an injunction that "ranges far beyond the dimensions of this case to police a range of cases untested here by the adversary process" and were "not for the benefit of [the plaintiff], whose injuries are fully remedied without the injunction"). Moreover, Plaintiffs have not identified any provision in the NVRA that would permit them to impose any obligation on Defendants other than simple compliance or that would permit the district court to order the State to spend untold thousands of dollars—not on compliance with the law, but on public-education campaigns and annual reporting to Plaintiffs' counsel.

### 1. The district court's general injunction against violating the NVRA is impermissibly vague and overbroad.

Paragraph 3 of the district court's judgment permanently enjoins "Defendants, their agents and successors in office, and all persons working in concert with them, from implementing practices and procedures that violate §§ 20503, 20504, and/or 20507 of the NVRA." ROA.3354. This portion of the injunction is not limited to Defendants or their employees, nor is it limited to the specific violations of the NVRA found by the district court in this case. Indeed, it is unclear what specific actions the district court might conclude violate those portions of the NVRA. Consequently, the injunction violates Rule 65 of the Federal Rules of Civil Procedure because it is vague and overbroad.

This Court has previously rejected this type of catch-all injunction and required the district court to speak with greater clarity. *See OCA-Greater Hous. v. Tex.*, 867 F.3d 604, 615 (5th Cir. 2017) (rejecting injunction that prohibited Defendants and

their successors from enforcing "the provisions of the Texas Election Code [that] are inconsistent with the Voting Rights Act"); *see also Scott*, 826 F.3d at 209-10 (rejecting as vague an injunction that required Defendant to "maintain in force and effect his or her policies, procedures, and directives, as revised, relative to the implementation of the [NVRA] with respect [to] coordination of the [NVRA] within Louisiana"). This vagueness and overbreadth is especially harmful given the district court's grant of indefinite enforcement authority to Plaintiffs for any action they believe violates the district court's judgment. ROA.3358.

## 2. The district court's injunction to launch a public-education and marketing campaign lacks any legal basis.

The district court ordered Defendants to implement a statewide public-education campaign, using multiple media (television, radio, internet, social media, or government websites) to educate Texans about its judgment. ROA.3356. Plaintiffs presented no evidence that a statewide public-education or marketing campaign is needed to redress Plaintiffs' alleged injuries (to the extent they have not already been redressed, *see supra* pp. 19-20). Nor could they. There is no reason to conduct a statewide multimedia campaign when the alleged wrongful conduct only affects people who are already using DPS's system. Posting voter-registration information in the DPS system would therefore provide a remedy perfectly tailored to the injury alleged by Plaintiffs: the inability to update their voter-registration information through an online DPS transaction. Yet the judgment requires Defendants and third-party vendors (who are not parties to this litigation) to engage in a 2-year statewide

marketing program to promote online voter registration. ROA.3356. And this judgment gives Plaintiffs' counsel the authority to approve Defendants' efforts. ROA.3356.

This type of relief is nowhere mentioned in the NVRA, which permits only appropriate declaratory and injunctive relief to individuals who have been aggrieved by violations of the NVRA. 52 U.S.C. § 20510(b)(2). The NVRA does not give federal courts carte blanche to order a State to do anything the district court believes may be beneficial, let alone compel the expenditure of public funds. And the costs to the State here could potentially amount to hundreds of thousands of dollars, depending on what Plaintiffs' counsel or the district court demand. *See* ROA.3378-79. Plaintiffs suggested below that it was appropriate to order the State to spend funds on a public-education campaign, citing a district court opinion in the voter ID litigation. ROA.3347-48. Plaintiffs fail to recognize, however, that the Texas Legislature had expressly directed the Secretary of State to educate the public about voter-identification requirements and had appropriated millions of dollars for that purpose, so the district court's order did not require the State to take any action not already required by the statute or spend any money that had not already been appropriated. *Veasey*, 830 F.3d at 226-27. That is not the case here.

### 3. The district court lacks authority to mandate the details of Texas's online system.

As the Seventh Circuit recognized, the NVRA does not permit courts to micromanage the details of an NVRA injunction. *Edgar*, 56 F.3d at 797-98; *cf. Horne v. Flores*, 557 U.S. 433, 448 (2009). While paragraph 2 of the Court's order attempts to

track the language of the NVRA (but fails to do so exactly), paragraph 4 removes any discretion the State has to determine how best to comply with the NVRA, setting the exact language to be used and the precise procedures to be followed. ROA.3354-55. As explained in the affidavits attached to Defendants' motion to stay filed in the district court, by mandating specific details of Defendant's actions, the district court has made it more difficult for Defendants to comply with the NVRA. ROA.3380-81, 3383-84 (explaining that the tracking requirements will require significant reprogramming of Texas's system).

As employees of DPS and the Secretary of State testified, it is technologically possible (given enough time) for the online DPS system to also permit voter registration. ROA.3270-72. The only controversy was whether that process was legally required. Defendants should be given the freedom—guaranteed by the Constitution and allowed under the NVRA—to determine how best to follow the dictates of the NVRA when implementing online voter registration, if that is what the NVRA and the Court require.

### 4. The district court had no authority to subject Defendants to monitoring by Plaintiffs' counsel.

The district court's injunction also requires Defendants to submit to monitoring by Plaintiffs' counsel for the next 3 years. ROA.3357-58. Defendants must compile reports concerning compliance efforts (including staff training needs and recommendations for improvement), statistics (including the number of online driver's-license transactions and the number of voter-registrations as a result), copies of all NVRA procedures and training materials related to online transactions (including materials

used now and in the future), lists of investigations and corrective actions related to online voter-registration transactions, policies or procedures related to online voter-registrations, and all customer complaints (including all correspondence) related to online voter registrations. ROA.3357-58. In addition, Defendants must also perform monthly quality-control tests until May 2019 and report the results to Plaintiffs' counsel every three months. ROA.3358.

None of these requirements remedy any injury alleged by Plaintiffs, none are warranted by the violations found in this lawsuit, and none are identified as potential remedies under the NVRA. As the Seventh Court has held, "until it appears that the state will not comply with such an injunction, there is no occasion for the entry of a complicated decree that treats the state as an outlaw and requires it to do even more than the 'motor voter' law requires." *Edgar*, 56 F.3d at 798. Monitoring by Plaintiffs' counsel, and especially to the extent required by the district court, is entirely unnecessary and unwarranted by the NVRA.

### 5. The district court's exercise of continuing jurisdiction is unwarranted and contrary to the NVRA.

A district court generally has jurisdiction to enforce its judgments. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996). But the district court retained jurisdiction not just over its judgment, but over undefined "obligations under the NVRA [and] the Equal Protection Clause," and gave Plaintiffs indefinite enforcement authority. ROA.3358. The Final Judgment provides that the Court:

> RETAINS jurisdiction over this action until two years after the date of this Judgment to ensure that Defendants continue to comply with their obligations under the NVRA, the Equal Protection Clause, and this Judgment,

and, if Defendants fail to comply with this Judgment at any time after the two-year deadline, permits Plaintiffs to initiate an enforcement action against Defendants in this Court.

ROA.3358. Given the overbreadth of the district court's injunction, this could, in theory, allow Plaintiffs to bring an enforcement action in the district court over any perceived violation of the NVRA, regardless of whether it injured the individual Plaintiffs or had any connection to the claims in this case. There is no basis for the district court to retain jurisdiction over such a broad range of conduct by Defendants, particularly here, where Plaintiffs' only alleged injury has already been redressed.

Moreover, by granting Plaintiffs indefinite authority to "initiate an enforcement action against Defendants" for any violation of the NVRA, the district court's injunction conflicts with the NVRA itself. Unless an alleged violation occurs within 30 days before a federal election, any party "aggrieved by a violation" of the NVRA must first "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. 20510(b)(1). The aggrieved party "may bring a civil action . . . with respect to the violation" only if the state official fails to correct the violation within the prescribed time period. *Id.* § 20501(b)(2). But the district court's injunction purports to grant Plaintiffs a license to bring an enforcement action at any time without providing the statutorily mandated notice. Thus, the district court's injunction is not only legally unfounded, it strips Defendants of the basic procedural protections that Congress provided in the NVRA.

## Conclusion

The Court should reverse the judgment of the district court and render judgment dismissing Plaintiffs' claims for lack of subject-matter jurisdiction or, in the alternative, reverse the judgment of the district court and render summary judgment for Defendants.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Scott A. Keller
Solicitor General

/s/ Matthew H. Frederick
Matthew H. Frederick
Deputy Solicitor General
matthew.frederick@oag.texas.gov

Beth Klusmann
Assistant Solicitor General

Counsel for Appellants

## Certificate of Service

On August 1, 2018, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,531 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK