# In the United States Court of Appeals for the Fifth Circuit

JARROD STRINGER; BENJAMIN HERNANDEZ; JOHN WOODS,

*Plaintiffs-Appellees*,

*v.*

ROLANDO PABLOS, In His Official Capacity as the Texas Secretary of State; STEVEN C. MCCRAW, In His Official Capacity as the Director of the Texas Department of Public Safety,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## APPELLANTS' REPLY BRIEF

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
kyle.hawkins@oag.texas.gov
matthew.frederick@oag.texas.gov

KYLE D. HAWKINS
Solicitor General

MATTHEW H. FREDERICK
Deputy Solicitor General

BETH KLUSMANN
Assistant Solicitor General

Counsel for Appellants

# Table of Contents

Page

Table of Authorities ............................................................................................ iii

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 2

    I.    Plaintiffs Lack Article III Standing. ................................................... 2

        A.  Plaintiffs have no evidence that they face certainly impending injury or a substantial risk of harm. ......................................... 3

        B.  Plaintiffs' legal arguments fail to demonstrate that standing exists in this case. ............................................................... 5

            1.  Plaintiffs must show a substantial risk of future harm to obtain prospective injunctive relief. .............................. 5

            2.  Cases from other courts that consider standing under the NVRA do not establish that Plaintiffs have standing in this case. ................................................................... 7

        C.  Even if mootness were the issue, the capable-of-repetition exception would not apply. ................................................ 9

    II.  Plaintiffs Have Not Proven a Violation of the Equal Protection Clause. ............................................................................................... 11

        A.  If the Court affirms the NVRA ruling, it should vacate the equal-protection ruling. ................................................................ 11

        B.  Plaintiffs failed to prove an unconstitutional burden, and Defendants' justifications for the signature requirement are sufficient. ........................................................................... 12

    III.  Plaintiffs Have Not Proven a Violation of the NVRA. ..................... 15

        A.  Plaintiffs failed to comply with the statutory prerequisites to suit for § 20504(a). ............................................................ 15

        B.  Plaintiffs have not shown that Defendants violated the NVRA .......... 16

    IV.  The Injunction Is Overbroad, Burdensome, and Unwarranted. ............... 18

        A.  The State's decision to litigate this case is not a refusal to comply with the NVRA. ............................................................... 18

        B.  Defendants' conduct in this litigation does not warrant an overbroad and intrusive injunction. .................................... 20

      C.   Plaintiffs cannot justify the burdens imposed by the injunction. ........22

Conclusion.......................................................................................................24

Certificate of Service......................................................................................25

Certificate of Compliance ..............................................................................25

# Table of Authorities

Page(s)

**Cases**

*Abbott v. Perez,*
138 S. Ct. 2305 (2018) ............................................................ 21

*Action NC v. Strach,*
216 F. Supp. 3d 597 (M.D.N.C. 2016) .................................... 8

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) ............................................................... 12

*Arcia v. Fla. Sec'y of State,*
772 F.3d 1335 (11th Cir. 2014) ............................................... 8

*Armstrong v. Turner Indus., Inc.,*
141 F.3d 554 (5th Cir. 1998) ............................................... 6-7

*Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar,*
56 F.3d 791 (7th Cir. 1995) ............................................. 15, 19

*Brown v. Board of Educ.,*
347 U.S. 483 (1954) ............................................................... 18

*Broyles v. Tex.,*
618 F. Supp. 2d 661 (S.D. Tex. 2009) (mem. op.), *aff'd*
381 F. App'x 370 (5th Cir. 2010) (per curiam, unpublished) ............................ 19

*Burdick v. Takushi,*
504 U.S. 428 (1992) ............................................................... 12

*Ctr. for Individual Freedom v. Carmouche,*
449 F.3d 655 (5th Cir. 2006) ................................................ 10

*Charles H. Wesley Educ. Found., Inc. v. Cox,*
324 F. Supp. 2d 1358 (N.D. Ga. 2004) ................................... 7

*Charles H. Wesley Educ. Found., Inc. v. Cox,*
408 F.3d 1349 (11th Cir. 2005) ......................................... 7, 10

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ............................................................ 2, 8

*Deutsch v. Annis Enters., Inc.,*
882 F.3d 169 (5th Cir. 2018) (per curiam) ............................. 6

*Doe v. Tangipahoa Parish Sch. Bd.,*
494 F.3d 494 (5th Cir. 2007) (en banc) ................................. 4

*Dunn v. Blumstein*,
   405 U.S. 330 (1972)................................................................. 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ..................................................................9

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...................................................................3

*Machete Prods., L.L.C. v. Page*,
   809 F.3d 281 (5th Cir. 2015).....................................................6

*Norman v. Reed*,
   502 U.S. 279 (1992) ................................................................ 11

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...................................................................6

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) .................................................. 13

*Ohio Democratic Party v. Husted*,
   834 F.3d 620 (6th Cir. 2016) .................................................. 13

*Prof'l Ass'n of Coll. Educators v. El Paso Cty. Cmty. Coll. Dist.*,
   730 F.2d 258 (5th Cir. 1984) ..................................................20

*Renne v. Geary*,
   501 U.S. 312 (1991) ..................................................................6

*Scott v. Schedler*,
   826 F.3d 207 (5th Cir. 2016) ..................................................22

*Sessions v. Morales-Santana*,
   137 S. Ct 1678 (2017)......................................................... 19, 20

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..............................................................4

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)..................................................................6, 9

*Storer v. Brown*,
   415 U.S. 724 (1974) ................................................................ 11

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..................................................................4

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) ..........................................................2, 8

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
402 U.S. 1 (1971) ................................................................ 18

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985) ............................................................. 3

*United States v. Louisiana*,
196 F. Supp. 3d 612 (M.D. La. 2016) (vacated by agreement) .......................... 23

*Van Wie v. Pataki*,
267 F.3d 109 (2d Cir. 2001) ................................................. 11

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) (en banc) ....................................... 11, 12

*Veasey v. Abbott*,
888 F.3d 792 (5th Cir. 2018) ................................................. 18

*Voting for Am., Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) ............................................. 12, 13, 19

*Voting Rights Coal. v. Wilson*,
60 F.3d 1411 (9th Cir. 1995) ............................................... 15, 19

**Statutes**

U.S. Const. art. I, § 4, cl. 1 ............................................... 15

37 Tex. Admin. Code § 15.59(c) ............................................. 4

52 U.S.C.
§ 20504(a) ............................................... 5, 15, 16, 17
§ 20504(a)(1) ............................................... 16
§ 20504(c) ............................................... 17
§ 20504(d) ............................................... 16
§ 20504(e)(1) ............................................... 23
§ 20510 ............................................... 24
§ 20510(a) ............................................... 7
§ 20510(b) ............................................... 15-16

Tex. Bus. & Com. Code § 322.005(b) ................................... 14

Tex. Elec. Code

    § 1.002(b) ................................................................ 14

    § 13.002(a) .........................................................12, 14

    § 13.002(b) .........................................................12, 14

    §§ 16.031-.038 ......................................................... 5

    §§ 16.091-.095 ......................................................... 5

    § 20.062 ................................................................. 19

    § 65.056(a) ............................................................. 10

Tex. Gov't Code § 2054.060(a) ....................................... 14

Tex. Transp. Code § 521.271(a)(1)................................... 4

# Introduction

Plaintiffs do not deny that they were registered to vote in their counties of residence at the time they filed this lawsuit. They have no evidence of plans to move to a new county in Texas, and they can only speculate that they might lose their voter registration someday and attempt to re-register while renewing their driver's licenses online. Consequently, there is no evidence of a substantial risk that Plaintiffs will experience any harm from being unable to use the online DPS driver's license system for voter-registration purposes. They lack Article III standing.

Plaintiffs' complaint that filling out and delivering (in person or by mail or fax) a voter-registration form or change-of-address form is an unconstitutional burden fares no better and serves only as a thinly veiled attempt to force Texas, via litigation, to adopt online voter-registration generally. Neither the Constitution nor the National Voter Registration Act compels that result.

And Plaintiffs cannot defend the overbroad injunction entered (at their request) by the district court. Instead, they fault Defendants for choosing to defend this lawsuit rather than immediately acquiesce to Plaintiffs' pre-suit demands. But the district court had no equitable or statutory authority to order such broad relief. Thus, even if the Court affirms the judgment on the merits, it should reverse and remand with instructions to limit the injunction to compliance with the terms of the NVRA.

# **ARGUMENT**

## I. **Plaintiffs Lack Article III Standing.**

Plaintiffs assert standing based on speculation that they might, someday, move to a new county or need to re-register to vote while renewing a driver's license. But there is no evidence that either situation will arise. Plaintiffs therefore lack standing.

Plaintiffs' theory would confer standing on every individual with a Texas driver's license, as any Texas driver might move to a new county someday or become unregistered to vote and seek to use the online DPS system. Appellees' Br. 16 (arguing that Plaintiffs "are driver's-license holders and active voters who interact with both the State's driver's license and election regimes regularly"), 20 (referring to the harm allegedly suffered by "every other qualified user of Texas's online driver's license application"). But that does not satisfy Article III, which requires a plaintiff to show that an injury is "certainly impending" or that there is a "substantial risk" of harm. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)). Plaintiffs cannot avoid fundamental standing principles by limiting those cases to their facts. The same principles apply in every case, and they require Plaintiffs to demonstrate that they face a substantial risk of harm in the future. Plaintiffs have not done so.[1]

---

[1] Oddly, Plaintiffs claim that Defendants "do not directly claim that Plaintiffs lack standing to bring their Equal Protection claims." Appellees' Br. 11 n.5. Defendants did "directly" make that claim. *See* Appellants' Br. 19-20, 23.

### A. Plaintiffs have no evidence that they face certainly impending injury or a substantial risk of harm.

To establish standing to seek prospective injunctive relief, Plaintiffs must show that they will interact with the allegedly unlawful online DPS system in the future, either by moving to a new county in Texas or seeking to register to vote (after first becoming unregistered) while renewing a driver's license. Appellants' Br. 20-26. If they do neither, then Plaintiffs will never experience the alleged injury they seek to redress under the NVRA and the Equal Protection Clause.

Plaintiffs make three general arguments to support their claim that they met their burden of proof on standing: (1) Plaintiffs have moved before, and people generally move; (2) Plaintiffs will have to renew their driver's licenses at some point; and (3) Plaintiffs' voter registration could be canceled someday. Appellees' Br. 17-19. Even if accepted as true, these general propositions do not prove that Plaintiffs face any risk of harm, much less a substantial risk.

First, the fact that Plaintiffs have moved in the past is not proof that they will move to a new county in the future.[2] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); *cf. Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (holding a claim is not

---

[2] Plaintiff Hernandez, for example, had been registered to vote in Ector County since he was 18 until he retired and moved to Dallas County in 2013 to be closer to family. ROA.2373-74. There is no reason to assume that he is likely to move again.

ripe if the injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks omitted). Plaintiffs' reliance on generalized census data, rather than their own testimony, to show the possibility that they might move in the future demonstrates their complete failure to meet their burden of proof. Appellees' Br. 18. Even if it was reasonable to assume, based on census data, that Plaintiffs might move in the future, standing cannot be based on assumptions. *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 498 (5th Cir. 2007) (en banc).

Plaintiffs next assert a hypothetical procedural harm: that they will have to renew their driver's licenses at some point in the future, so the failure of the online DPS system to allow them to register to vote (whether they need to register or not) is an Article III injury-in-fact. Appellees' Br. 17. But Plaintiffs do not say when, if ever, they will renew their driver's licenses online or, if they do, why they would also need to register to vote. As explained in Defendants' opening brief, Texans must renew their driver's licenses every six years, but every other renewal must take place in person. Appellants' Br. 22 (citing Tex. Transp. Code § 521.271(a)(1); 37 Tex. Admin. Code § 15.59(c)). Plaintiffs provided no evidence of when their licenses are next up for renewal and whether they will be able to do so online. Further, unless they also need to register to vote while renewing their driver's licenses, Plaintiffs will experience only a bare procedural harm from accessing an allegedly noncompliant online system, unaccompanied by any concrete injury. Article III standing requires more. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496-97 (2009).

Finally, Plaintiffs speculate that their voter registration could be canceled at some point in the future. Appellees Br. 18-19. They cite several Texas laws that authorize the cancelation of voter registration for various reasons including ineligibility, a successful challenge to a voter's registration, or the voter's own choice. Appellees' Br. 18-19 (citing Tex. Elec. Code §§ 16.031-.038, .091-.095). But Plaintiffs cite no evidence that any of those unusual situations are likely to occur.

Even if Plaintiffs' voter registrations were cancelled, they would not be subjected to an alleged violation of 52 U.S.C. § 20504(a) unless they also needed to renew their driver's license when they attempted to register. While any person *might* become unregistered while his driver's license is up for renewal, there is no evidence that Plaintiffs will find themselves in that situation. The bare possibility that those events might coincide for a plaintiff is far too speculative to support standing. Plaintiffs therefore failed to prove their standing to seek prospective injunctive relief.

## B. Plaintiffs' legal arguments fail to demonstrate that standing exists in this case.

The fact that an individual was injured in the past does not, by itself, create standing for future injunctive relief. Appellants' Br. 24-26. Article III requires Plaintiffs to show a substantial risk of future harm or a certainly impending injury. They have not done so.

### 1. Plaintiffs must show a substantial risk of future harm to obtain prospective injunctive relief.

Plaintiffs' claim that they were harmed in the past—when they were unable to change their voter-registration addresses online and allegedly "disenfranchised" as

a result—does not identify a redressable injury, nor does it create standing to seek prospective injunctive relief. Plaintiffs offer no response to Defendants' point that such harms are not redressable and therefore cannot provide standing to press their claims. Appellants' Br. 19-20. Even if past harm could support standing (and it cannot), it would not give Plaintiffs standing here because they seek only prospective relief, and it could not support the injunction because the district court did not purport to redress any past harm. ROA.3352-58.

The Supreme Court and this Court have repeatedly held that past harms are insufficient to create standing to seek prospective injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 105-07 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 172 (5th Cir. 2018) (per curiam); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015).[3] Plaintiffs' only response is an attempt to distinguish particular cases on their facts. But the legal principles apply in every case, and they defeat Plaintiffs' effort to prove standing.

Plaintiffs assert that *O'Shea* and *Lyons* are distinguishable because they involved speculation that an individual would commit a crime and be mistreated in the future. Appellees' Br. 19. But the principles in those cases apply in non-criminal settings. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (environmental law); *Renne v. Geary*, 501 U.S. 312, 320-21 (1991) (election law); *Machete Prods.*, 809 F.3d at 288 (First Amendment); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554,

---

[3] Defendants did not "ignor[e]" Plaintiffs' assertion of ongoing injury, Appellees' Br. 12, but fully briefed the issue of alleged future harm, Appellants' Br. 20-26.

563 n.24 (5th Cir. 1998) (employment discrimination). And Plaintiffs' argument that alternative remedies existed in *O'Shea* and *Lyons* (so the violations of law could still be stopped) is of no help either. Appellees' Br. 19. Relief under the NVRA can come from a suit by the U.S. Attorney General, 52 U.S.C. § 20510(a), or by individuals who experience a violation of the NVRA but, unlike Plaintiffs, remain unregistered to vote in their current county.

Plaintiffs' attempt to distinguish this Court's precedent only proves their lack of standing. They argue that the plaintiffs in *Deutsch* and *Machete Productions* lacked standing because they failed to demonstrate a risk of future harm. Appellees' Br. 20-21 (discussing *Deutsch* and *Machete Prods.*). That is true, but it is equally true of Plaintiffs themselves, *see supra* pp. 3-5. This Court's cases are on point, and they require dismissal of Plaintiffs' claims.

### 2. Cases from other courts that consider standing under the NVRA do not establish that Plaintiffs have standing in this case.

Plaintiffs' NVRA-specific cases do not demonstrate that standing exists in this case. Appellees' Br. 13-15. Plaintiffs miss the point of *Charles H. Wesley Education Foundation, Inc. v. Cox*, 408 F.3d 1349 (11th Cir. 2005). The plaintiff there, like Plaintiffs here, was registered to vote. But unlike Plaintiffs, she had moved and was not registered to vote in her new precinct when she filed suit because the State would not accept her change-of-address form. *Id.* at 1352; *see also Charles H. Wesley Educ. Found., Inc. v. Cox*, 324 F. Supp. 2d 1358, 1362-63 (N.D. Ga. 2004). The district court had to enter a preliminary injunction ordering the State to accept her paperwork. *Charles H. Wesley*, 408 F.3d at 1352 n.3. Here, Plaintiffs were registered to vote in

their "new" counties at the time they filed suit. ROA.2547, 2568, 2582. They did not need a court order to vote in future elections.

The plaintiffs in *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014), showed a "realistic probability" that they would be wrongly removed from the voting rolls in violation of the NVRA because they had already been removed by Florida's faulty data-matching process, which incorrectly identified them as non-citizens. *Id.* at 1341. Although the court should have held the plaintiffs to the "substantial risk" or "certainly impending" standard, *see Susan B. Anthony List*, 134 S. Ct. at 2341, the plaintiffs apparently demonstrated a "realistic probability" that the State's data-matching process would again remove them from the rolls regardless of any action or inaction by the plaintiffs. Here, Plaintiffs have made no showing that they will move to a new county or become unregistered to vote. *See supra* 3-5.

Finally, the district court's decision in *Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D.N.C. 2016), cannot help Plaintiffs because the court did not even acknowledge the Supreme Court's decisions in *O'Shea*, *Lyons*, *Susan B. Anthony List*, or *Clapper*. The district court's conclusion in *Strach* that it was "reasonably likely" that the plaintiffs would use the allegedly unlawful DMV services in the future, *id.* at 615, is directly contrary to the Supreme Court's holding that an "objectively reasonable likelihood" of an injury is insufficient to establish standing, *Clapper*, 568 U.S. at 410. Perhaps the district court's decision can be excused because it was a motion to dismiss, rather than a ruling after evidence had been presented, but it utterly failed to apply the correct standards. This Court should not make the same mistake.

Plaintiffs sought and obtained prospective injunctive relief despite their complete failure to prove a substantial risk that they will be harmed by their inability to engage in voter-registration transactions online. Plaintiffs failed to meet their burden on standing. Their claims should be dismissed.

## C. Even if mootness were the issue, the capable-of-repetition exception would not apply.

Because Plaintiffs lacked standing when they filed suit, the Court should not consider this a mootness issue. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see Steel Co.*, 523 U.S. at 109. But even if mootness were the question, the capable-of-repetition-yet-evading-review exception would not apply. There is sufficient time for an individual to properly bring a lawsuit with the same claims as Plaintiffs, and it is unlikely that Plaintiffs will experience the same harm in the future.

Plaintiffs' first argument—that any injury and remedy will be simultaneous and therefore incapable of review—is based on two flawed assumptions. Appellees' Br. 21-22. First, Plaintiffs assume that no individual will realize that he was unable to register online until he attempts to vote and is rejected. But Plaintiffs admit that the online DPS system informs users that their online activities did not register them to vote. Appellees' Br. 5-6; ROA.3255 (past version of system). Thus, when a person registers online, he is informed that he cannot do so. He does not need to wait until Election Day to discover that fact.

Second, Plaintiffs assume that if an individual discovers his lack of registration on Election Day, he will cast a provisional ballot and become registered to vote, curing his harm without an opportunity to sue. Appellees' Br. 21-22 (citing Tex. Elec. Code § 65.056(a)). But there is no obligation to cast a provisional ballot. Indeed, Plaintiff Stringer subsequently registered to vote at a college. ROA.2475.

Plaintiffs posit a false choice—vote and forfeit the right to sue, or sue and forfeit the right to vote. Appellees' Br. 22-23. In fact, a plaintiff who is unable to register online can sue before Election Day and obtain a preliminary injunction (assuming the elements are met) that allows him to vote in upcoming elections, even if the lawsuit is still pending. *See, e.g.*, *Charles H. Wesley*, 408 F.3d at 1352 n.3. That Plaintiffs did not choose this course does not mean it is unavailable for other plaintiffs.

Plaintiffs fail to engage the argument that the election cycle would not moot their claims. Plaintiffs generally assert that voter registration is linked to elections, Appellees' Br. 23, but they fail to recognize that voters do not have to re-register before every single election. They register only once unless their circumstances change. Changes affecting registration are not timed to the election cycle; they are personal to each individual voter. Therefore, the election cycle does not operate to shorten the time in which a lawsuit can be completed.

Finally, Plaintiffs rely on *Center for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006), a First Amendment case, to relax the "same complaining party" standard necessary for the capable-of-repetition exception to mootness. But the discussion in *Carmouche* is dictum, as the Court had already determined that the plaintiff intended to engage in same conduct in the future. *Id.* at 662. And the cases

on which *Carmouche* relied provide little additional support. *Dunn v. Blumstein*, 405 U.S. 330 (1972), was a class action, which invokes different mootness considerations. And *Storer v. Brown*, 415 U.S. 724 (1974), not only involved a ballot-access law, subsequent decisions confirm that it did not eliminate the same-complaining-party requirement in election cases. *See, e.g.*, *Norman v. Reed*, 502 U.S. 279, 288 (1992) (holding that, in election case, the "same parties" would be subject to allegedly unlawful conduct again); *Van Wie v. Pataki*, 267 F.3d 109, 114-15 (2d Cir. 2001).

## II. Plaintiffs Have Not Proven a Violation of the Equal Protection Clause.

The Court should reverse the district court's judgment that Defendants violated the Equal Protection Clause regardless of its decision on the NVRA claim. If the Court affirms the NVRA ruling, then the constitutional ruling is unnecessary. In any event, Plaintiffs have not demonstrated that Defendants have subjected them to unequal treatment or placed an unconstitutional burden on their right to vote.

### A. If the Court affirms the NVRA ruling, it should vacate the equal-protection ruling.

If the Court affirms the NVRA ruling, it should vacate the equal-protection holding. *See Veasey v. Abbott*, 830 F.3d 216, 265 (5th Cir. 2016) (en banc). Plaintiffs make no argument that the equal-protection ruling is necessary to achieve additional relief that is unavailable under the NVRA. Their equal-protection claim is identical to their NVRA claim. Appellants' Br. 29.

Contrary to Plaintiffs' suggestion, the district court did not indicate that it reached the equal-protection ruling as an "alternative" to its NVRA ruling. Appellees' Br. 37. Even if it did, however, this Court in *Veasey* reversed the district court's

11

judgment on a constitutional violation once it determined that the finding of a statutory violation should be affirmed. 830 F.3d at 265. The same result should occur here if the Court affirms the NVRA ruling. [4]

### B. Plaintiffs failed to prove an unconstitutional burden, and Defendants' justifications for the signature requirement are sufficient.

As Defendants argued below, Plaintiffs failed to demonstrate a burden on their right to vote under the *Anderson/Burdick* test. ROA.2819-21; *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The first consideration in the *Anderson/Burdick* analysis is the "character and magnitude of the asserted injury." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013). Try as they might, Plaintiffs cannot transform their asserted injury—having to fill out and sign a voter-registration form, like most other Texans—into an unconstitutional burden. The district court erred in holding otherwise.

Texans can register to vote in several ways: in person, by mail, or by fax. Tex. Elec. Code § 13.002(a). Texas law, in accordance with the NVRA, also permits voter registration in conjunction with a driver's license transaction (either in person or by mail). But because of its written signature requirement, *id.* § 13.002(b), Texas has never permitted online voter registration. Yet, Plaintiffs now claim that the failure to permit such registration in conjunction with online driver's license renewals subjects them to unequal treatment and unconstitutionally burdens their right to vote. But

---

[4] This argument was not waived. Appellees' Br. 36 n.14. Defendants could not have argued that the district court's constitutional ruling was unnecessary unless and until the district court made the unnecessary ruling.

Plaintiffs were required to take the same "steps," Appellees' Br. 39, as individuals who register to vote in person, by mail, or by fax. Those steps do not impose an unconstitutional burden on the right to vote.

Voters who submit a voter-registration form in person or by mail are not "disenfranchised," and neither were Plaintiffs. They do not allege that they were incapable of filling out the form; they simply did not do so. This case is therefore different from *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012), on which Plaintiffs rely. Appellees' Br. 40. Although the state defendants in *Husted* argued that there were "ample" alternative methods to vote, the district court found that "thousands of voters . . . *will not be able* to exercise their right to cast a vote in person." *Husted*, 697 F.3d at 431 (emphasis added). The district court here did not find that any person would be unable to vote if he had to register in person or by mail. Nor have Plaintiffs cited any case that considers registration by mail or in person to be an unconstitutional burden.

Because Plaintiffs failed to demonstrate a burden on their right to vote, Defendants' obligation to prove the State's interest is minimal. *See, e.g.*, *Voting for Am.*, 732 F.3d at 394-95; *see also Ohio Democratic Party v. Husted*, 834 F.3d 620, 632 (6th Cir. 2016); Appellants' Br. 32. Written signatures are not frequently used, but they can be helpful in certain circumstances regarding the maintenance of voting rolls and

fraud. ROA.2298, 2512, 2522-23. That is sufficient to justify Texas's written-signature requirement.[5]

Plaintiffs claim that Texas law allows state agencies to accept electronic signatures in lieu of paper-and-ink signatures. Appellees' Br. 42. But Texas law prohibits the use of electronic signatures for voter-registration purposes. The provisions of the Texas Election Code "supersede[] a conflicting statute outside th[e] code unless th[e] code or the outside statute expressly provides otherwise." Tex. Elec. Code § 1.002(b). The Election Code requires application in person, by mail, or by fax, and it requires a written signature. *Id.* § 13.002(a), (b). The cited laws regarding electronic signatures conflict with the Election Code; under section 1.002(b), the Election Code's requirements prevail. *See, e.g.*, Tex. Bus. & Com. Code § 322.005(b); Tex. Gov't Code § 2054.060(a). The Constitution does not require otherwise.

There is no constitutional obligation to combine voter-registration transactions with driver's-license transactions. To hold otherwise would imply that the provisions of the NVRA are required by the Constitution. Plaintiffs' argument that the inability to register online burdens a small segment of the population (those renewing their driver's licenses online) has no logical stopping point, as filling out and delivering a voter-registration form imposes the same "burden" whether one is engaged

---

[5] Defendants did not waive these arguments. Appellees Br. 40-41. Defendants stated below that the written signature requirement helped "maintain[] county-based voter rolls[] and allow[ed] signatures to be compared when there is a potential problem." ROA.2821. Defendants' paraphrase on appeal—"maintaining accurate voting rolls and combatting fraud"—is the same. Appellants' Br. 31.

in an online driver's license transaction or not. Plaintiffs seek policy change through litigation, but the Constitution does not require what they demand.

## III. Plaintiffs Have Not Proven a Violation of the NVRA.

Courts have held that the NVRA is permitted by the Constitution. U.S. Const. art. I, § 4, cl. 1; *Voting Rights Coal. v. Wilson*, 60 F.3d 1411, 1415 (9th Cir. 1995); *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 795 (7th Cir. 1995). It is nevertheless a direct intrusion by the federal government into state voter-registration activity. Courts should therefore construe it narrowly so that it imposes only those burdens on the States that Congress explicitly commanded.

### A. Plaintiffs failed to comply with the statutory prerequisites to suit for § 20504(a).

Plaintiffs are not proper parties to bring claims for violations of 52 U.S.C. § 20504(a) because they failed to meet the statutory requirements of § 20510(b). No Plaintiff was "aggrieved" by a violation of § 20504(a) because no Plaintiff attempted to register to vote while renewing his driver's license online. ROA.32-33. And no Plaintiff provided notice to Defendants that they experienced a violation of § 20504(a). ROA.32-33, 2233, 2242, 2245. Therefore, no Plaintiff may sue under the NVRA for a violation of § 20504(a). 52 U.S.C. § 20510(b) (limiting lawsuits to individuals "aggrieved" by violations of the NVRA and requiring pre-suit notice).

Defendants have never claimed a lack of notice that plaintiffs' *counsel* believed § 20504(a) was violated, Appellees' Br. 27 & n.9, but that is not what the statute requires. The NVRA provides a cause of action only to those who are personally aggrieved by a violation and who have notified Defendants of the violation. 52 U.S.C.

§ 20510(b). It is no excuse to argue, as Plaintiffs do, that Texas uses the same online system for driver's-license renewals and changes of address, because the NVRA sets out different requirements for driver's license renewals, *id.* § 20504(a), and changes of address, *id.* § 20504(d). Plaintiffs cannot bring claims under § 20504(a).

## B. Plaintiffs have not shown that Defendants violated the NVRA.

**Section 20504(a)** – Plaintiffs argue that the NVRA does not require paper-and-ink signatures, but that misses the point of Defendants' argument. Appellees' Br. 28. The question is whether the NVRA requires States to accept electronic signatures when State law requires written signatures. The NVRA does require a signature on the voter-registration portion of an application, 52 U.S.C. § 20504(a), but it says nothing about whether States must accept electronic signatures if state law requires otherwise. Unless the NVRA clearly compels States to accept electronic signatures on certain voter-registration applications, the issue is left to the States.

**Section 20504(d)** – Plaintiffs fail to engage Defendants' argument regarding § 20504(d), and they do not explain why it does not require a signature—unlike a driver's-license application or renewal—if Congress intended for driver's-license change-of-address forms to serve as applications for voter registration. *Cf. id.* § 20504(a)(1) (providing that a driver's license application "shall serve as an application for voter registration . . . unless the applicant fails to sign the voter registration application"). The lack of a signature requirement for driver's-license change-of-address forms under the NVRA suggests that Congress did not anticipate that a driver's-license change-of-address transaction would result in voter registration (as opposed to a change of address in voting records). In that case, Congress would have

had no reason to consider whether updating a driver's-license address "in accordance with state law" would be sufficient to update voter-registration "in accordance with state law." *Cf.* Appellees' Br. 31 n.12. That might explain why the NVRA, like Texas law, does not require a signature for driver's-license change-of-address transactions. *Cf. id.* at 32. In any event, Congress clearly accepted the idea that when a driver's-license transaction also results in voter registration, the voter should provide a signature. 52 U.S.C. § 20504(a). Plaintiffs' interpretation of the statute fails to account for that expression of congressional intent.

**Sections 20504(c), (e) and 20507(a)(1)(A)** – Plaintiffs also misunderstand Defendants' argument regarding subsection (c). Appellees' Br. 33-34. The anti-duplication provisions in subsection (c) apply only to combined voter-registration and driver's-license transactions. 52 U.S.C. § 20504(c) (referring to the "voter registration application portion of an application for a State motor vehicle driver's license"). Because Texas requires a written signature on voter-registration applications, there is no combined online form; therefore, the information on the voter-registration application is not duplicative. That information is duplicative only if subsections (a) and (d) compel the State to provide online voter registration and thereby forbid the State to require written signatures.[6] In short, if subsections (a) and (d) are not violated by Defendants' conduct, neither is subsection (c).

---

[6] If that is permissible, it would make no sense to independently prohibit duplicative information under subsection (c), as simply sending the Secretary of State a written signature, unaccompanied by any other identifying information could not possibly be an effective way to register to vote.

The same holds for § 20504(e) and § 20507(a)(1)(A), which set deadlines for the processing of voter-registration information. If Texas is not required to treat online transactions as voter-registration transactions, the deadlines do not apply.

## IV. The Injunction Is Overbroad, Burdensome, and Unwarranted.

Plaintiffs do not deny that the injunction entered by the district court is burdensome and far-reaching. They argue, instead, that it is appropriate because Defendants have "repeatedly violated the NVRA." Appellees' Br. 49. That claim is entirely without foundation. Defendants' decision to litigate this case on the merits—as is their right—rather than capitulate to Plaintiffs' pre-suit demands cannot justify a burdensome and overbroad injunction. Plaintiffs offer no authority to the contrary.

### A. The State's decision to litigate this case is not a refusal to comply with the NVRA.

Like Plaintiffs' attempt to punish the State for defending this lawsuit, their attempt to equate this case with school-desegregation litigation lacks any foundation. Appellees' Br. 45-46 (citing *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971)). The effort to desegregate schools justified extraordinary remedial measures because segregation persisted for years after the Supreme Court's decision in *Brown v. Board of Education*, 347 U.S. 483 (1954). *See, e.g.*, *Veasey v. Abbott*, 888 F.3d 792, 805 (5th Cir. 2018) (Higginbotham, J., concurring) (noting that desegregation cases were dismissed "only upon the achievement of unitary status, which often took decades"). This is the first case to raise particular questions of NVRA interpretation in Texas, and the State has a right to seek a judicial determination of those questions

before it modifies its voting practices. To put it mildly, the unique circumstances of school desegregation do not exist here.

Moreover, there is no history of repeated misconduct with respect to the NVRA. In fact, this is the only lawsuit in which Defendants have been found liable for violating the NVRA. *See Voting for Am.*, 732 F.3d at 399-400 (finding no NVRA violation); *Broyles v. Tex.*, 618 F. Supp. 2d 661, 689-92 (S.D. Tex. 2009) (mem. op.), *aff'd* 381 F. App'x 370 (5th Cir. 2010) (per curiam, unpublished) (dismissing NVRA claim). Plaintiffs admit that Defendants comply with the NVRA with respect to in-person and mail-in transactions. ROA.2194; Tex. Elec. Code § 20.062. And before this lawsuit, Plaintiffs' counsel and Defendants were able to negotiate solutions to other concerns raised by Plaintiffs' counsel. ROA.153-202, 348-52.

For that reason, this case is on all fours with cases in which the Ninth and Seventh Circuits counseled against broad and burdensome injunctions given the federalism principles involved in the NVRA. *Wilson*, 60 F.3d at 1416; *Edgar*, 56 F.3d at 796-98. The defendant States in those cases pursued litigation to determine their obligations under the NVRA, and they were ultimately found to be in violation. *Wilson*, 60 F.3d at 1412-13; *Edgar*, 56 F.3d at 793. Yet both Circuits warned the district court not to impose burdensome injunctions that went beyond the limited authority found in the NVRA. *Wilson*, 60 F.3d at 1416; *Edgar*, 56 F.3d at 796-98.

Plaintiffs' equal-protection claim did not give the district court license to impose extraneous burdens on the State. In *Sessions v. Morales-Santana*, 137 S. Ct 1678, 1698 (2017), *cited in* Appellees' Br. 46, the Supreme Court explained that "[W]hen the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of

equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Sessions*, 137 S. Ct. at 1698. Thus, the "appropriate remedy" for an equal-protection violation in this case would be an order of equal treatment for online, in-person, and mail-in DPS customers—not a public-education campaign, detailed compliance requirements, and continual monitoring.

Plaintiffs claim that the district court has "[b]road [d]iscretion" to impose an injunction that affords Plaintiffs "complete relief." Appellees' Br. 45. But they do not explain why "complete relief" requires a statewide public-education campaign, monthly quality-control tests, and detailed annual reports. Nor do Plaintiffs identify a statutory source for the court's authority to issue such an injunction. It is not sufficient to claim that injunctions may incidentally benefit third parties. Appellees' Br. 45-46 (citing *Prof'l Ass'n of Coll. Educators v. El Paso Cty. Cmty. Coll. Dist.*, 730 F.2d 258, 273-74 (5th Cir. 1984)). That an injunction may *incidentally* benefit third parties does not give a court authority to order an injunction that benefits *only* third parties.

## B. Defendants' conduct in this litigation does not warrant an overbroad and intrusive injunction.

Plaintiffs suggest that Defendants' conduct in this litigation demonstrates a pattern of noncompliance. Appellees' Br. 44-45, 53. It does not. Defendants were sanctioned once for a delay in producing documents, which had to be reviewed to prevent disclosure of sensitive personally identifying information. ROA.1540-44; ROA.1471.

That matter is over, and it has no relevance to Defendants' compliance with the district court's judgment on the merits. Indeed, had Defendants intended to defy the judgment, they would not have gone to the trouble of seeking a stay from this Court.

Nor did the district court have additional leeway to impose an overbroad injunction simply because Defendants did not propose a narrower one. Appellees' Br. 45. The district court ordered the parties to submit a "proposed form of judgment." ROA.3311. Unsurprisingly, the parties were unable to agree on a proposed form of judgment, so Defendants simply filed objections to Plaintiffs' proposed judgment raising the same issues that Defendants are now raising on appeal. ROA.3334-42. The district court did not indicate that it believed Defendants' conduct warranted closer monitoring of Defendants.[7]

Plaintiffs repeatedly accuse Defendants of willingly and intentionally refusing to comply with the NVRA. Appellees' Br. 44, 47, 49, 51, 53. These accusations stem from Defendants' refusal to agree to Plaintiffs' pre-suit demands, choosing instead to litigate this case on the merits. Defendants' right to due process entitles them to seek a ruling on the NVRA's requirements. *Cf. Abbott v. Perez,* 138 S. Ct. 2305, 2330 (2018) (rejecting the district court's inference of bad faith from the State's decision to pursue an appeal). And because the district court's judgment has been stayed, there has not even been an opportunity for Defendants to violate the judgment, much

---

[7] Plaintiffs' argument here is a post hoc justification, as they proposed a nearly identical form of judgment to the one entered by the district court, without knowing that Defendants would not propose their own judgment. ROA.3312-33.

less do so repeatedly and willingly. There are no grounds to find that Defendants' conduct requires a burdensome injunction to ensure compliance.

## C. Plaintiffs cannot justify the burdens imposed by the injunction.

Plaintiffs recognize that an injunction must be "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order." Appellees' Br. 46 (quoting *Scott v. Schedler*, 826 F.3d 207, 214 (5th Cir. 2016)). Plaintiffs' suggestion that the district court's injunction meets that standard is bewildering.

Plaintiffs cannot explain, for example, why a public-education campaign was necessary, let alone compelled by the NVRA. Their allegation that voters in Texas were confused, Appellees' Br. 51, is both unproven and irrelevant. The confusion, if any, results from a mistaken belief that online DPS transactions provide a mechanism to register to vote online. That confusion will end once Defendants provide for online voter registration through online DPS transactions (if the NVRA so requires); it does not require a public-education campaign.

Plaintiffs offer no basis for the district court to order Texas to spend public funds, perhaps hundreds of thousands of dollars, without any statutory authority. Again, in the voter-ID case that Plaintiffs reference, the Texas Legislature had already appropriated funds for voter education. Appellees' Br. 51. The district court's order there simply implemented what the State had already agreed (and appropriated funds) to do.

The district court also exceeded its authority when it ordered Defendants to take actions not required by the NVRA. The district court mandated the exact language Defendants must use and the questions they must ask online. ROA.3355. The court

required Defendants to "track, record, and retain" each response to the questions mandated by the court—an obligation found nowhere in the NVRA. ROA.3355. And the court ordered Defendants to transmit all voter-registration information for each online transaction to the Secretary of State's office, even if the individual indicates he does not wish to register to vote and even though the NVRA requires transmission only of "completed" applications. ROA.3355-56; 52 U.S.C. § 20504(e)(1).

Plaintiffs' attempt to defend the injunction's monitoring and quality-control-testing provisions also falls flat. They argue that monitoring can be appropriate when a defendant has shown an unwillingness to abide by the law. Appellees' Br. 52-53. No such showing has been made here. Defendants have not yet had to abide by the district court's injunction, but they have every intention of complying if ultimately ordered to do so. The district court decision on which Plaintiffs rely actually rejected a request for monitoring, holding that "a remedy must be carefully tailored to achieve the federal law's ends in the least obtrusive possible manner." *United States v. Louisiana*, 196 F. Supp. 3d 612, 677 (M.D. La. 2016) (vacated by agreement). Unless and until Plaintiffs prove a pattern of noncompliance with the district court's judgment, there are no grounds to force Defendants to provide Plaintiffs' counsel with quality-control tests and annual reports.

Finally, in retaining jurisdiction and granting Plaintiffs' counsel authority to "enforc[e]" the overbroad injunction, ROA.3358, the district court imposed a burden that cannot be justified by the terms of the NVRA. Defendants cannot even change the language of their online systems without asking the court's permission, lest they be held in contempt for violating the terms of the judgment. And Plaintiffs

offer no response to the point that the court's purported delegation of enforcement authority conflicts with the NVRA's pre-suit notice provisions, 52 U.S.C. § 20510.

## Conclusion

The Court should reverse the judgment of the district court and render judgment dismissing Plaintiffs' claims for lack of subject-matter jurisdiction or, in the alternative, reverse the judgment of the district court and render summary judgment for Defendants.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
kyle.hawkins@oag.texas.gov
matthew.frederick@oag.texas.gov

Kyle D. Hawkins
Solicitor General

/s/ Matthew H. Frederick
Matthew H. Frederick
Deputy Solicitor General

Beth Klusmann
Assistant Solicitor General

Counsel for Appellants

## CERTIFICATE OF SERVICE

On September 14, 2018, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6328 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK