# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

JARROD STRINGER; BENJAMIN HERNANDEZ; JOHN WOODS,

*Plaintiffs–Appellees,*

*v.*

ROLANDO PABLOS, in His Official Capacity as the Texas Secretary of State; STEVEN C. MCCRAW, in His Official Capacity as the Director of the Texas Department of Public Safety,

*Defendants–Appellants.*

## *AMICUS CURIAE* BRIEF OF THE NATIONAL ASSOCIATION OF LATINO ELECTED AND APPOINTED OFFICIALS (NALEO), LORI EDWARDS, AND CLAY LEWIS JENKINS IN SUPPORT OF APPELLEES AND AFFIRMANCE

On Appeal From The United States District Court For
The Western District of Texas, San Antonio Division

THE HONORABLE ORLANDO L. GARCIA, CHIEF U.S. DISTRICT JUDGE

Sarah Brannon*
Ceridwen Cherry
Davin Rosborough*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
T: (202) 675-2312

Chiraag Bains*
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
T: (202) 864-2746

Niyati Shah*
ASIAN AMERICANS
ADVANCING JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
T: (202) 296-2300

Naila S. Awan
Stuart Naifeh
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
T: (212) 633-1405

Edgar Saldivar
Tommy Buser-Clancy
ACLU FOUNDATION OF TEXAS,
INC.
P.O. Box 8306
Houston, TX 77288-8306
T: (713) 325-7011

*Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

JARROD STRINGER, *et al.*,
*Plaintiffs–Appellants*,

*v.*

RONALDO PABLOS, *et al.*,
*Defendants–Appellees.*

## SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rules 29.2 and 28.2.1, the undersigned counsel of record for amici certify that the parties' list of persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case, and that list is complete, to the best of undersigned counsel's knowledge. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Amici further state that NALEO is a 501(c)(4) non-profit organization. NALEO is not a publicly-held corporation and does not issue stock or have a parent corporation.

Dated: September 10, 2018

*/s Chiraag Bains*
Chiraag Bains*
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
T: (202) 864-2746

Naila S. Awan
Stuart Naifeh
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
T: (212) 633-1405

*/s Niyati Shah*
Niyati Shah*
ASIAN AMERICANS ADVANCING
JUSTICE | AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
T: (202) 296-2300

*/s Davin Rosborough*
Sarah Brannon*
Ceridwen Cherry
Davin Rosborough*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
T: (202) 675-2312

*/s Edgar Saldivar*
Edgar Saldivar
Tommy Buser-Clancy
ACLU FOUNDATION OF TEXAS,
INC.
P.O. Box 8306
Houston, TX 77288-8306
T: (713) 942-8146

*\* Not admitted in the District of
Columbia; practice limited pursuant
to D.C. App. R. 49(c)(3).*

# TABLE OF CONTENTS

INTEREST OF AMICI ..................................................................................1

SUMMARY OF THE ARGUMENT ............................................................2

BACKGROUND ........................................................................................3

ARGUMENT .............................................................................................6

I.    THE EXPERIENCES OF OTHER STATES ILLUSTRATE OPTIONS TO ACCOMPLISH NVRA COMPLIANCE THAT CAN EASILY AND EFFICIENTLY BE IMPLEMENTED, WHILE ACHIEVING SUBSTANTIAL VOTER REGISTRATION BENEFITS. ..................................................6

    A.    States Have Adopted Efficient And Effective Practices To Successfully Become NVRA Compliant. ................................................................7

        1.    In Georgia And New Jersey, Voter Registration Is Integrated Into The DMV's Online Portal And Does Not Require A Separate Physical Signature. 8

        2.    In Michigan, Simultaneous Change-of-Address Updates Are Satisfied By Automatic Electronic Transmission Of Information From The State Motor Vehicle Agency To Local Election Officials. ..................................13

II.    TEXAS EASILY CAN COMPLY WITH AND ADVANCE THE OBJECTIVES OF THE NVRA BY ADOPTING PRACTICES SUCCESSFULLY IMPLEMENTED IN OTHER STATES. ................................................15

CONCLUSION .........................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Am. Civil Rights Union v. Phila. City Comm'rs*,
872 F.3d 175 (3d Cir. 2017) ................................................................6

*Ass'n of Cmty. for Reform Now v. Fowler*,
178 F.3d 350 (5th Cir. 1999) ...............................................................4

*Stringer v. Pablos*,
-- F. Supp. 3d --, 2018 WL 2193034 (W.D. Tex. May 10, 2018) ......................5

**Statutes, Rules, and Legislation**

52 U.S.C. § 20501(b)(1) ..........................................................................4

52 U.S.C. § 20502(3) ...............................................................................8

52 U.S.C. § 20504 ....................................................................................4

5th Cir. R. 29.2 ........................................................................................1

Fed. R. App. P. 29(a)(4)(E) ......................................................................1

P.L. 2018, c.6, 2018 Leg., 218th Sess. (N.J. 2018) ................................11

S. Rep. No. 103-6 (1993) ......................................................................4-6

**Other Authorities**

*Election Officials' Manual – Chapter 2 Voter Registration*, Mich. Bureau of
Elections (Jan. 2017),
https://www.michigan.gov/documents/sos/II_Voter_Registration_265983
_7.pdf .....................................................................................................15

*National Voter Registration Act of 1993*, U.S. Dep't of Justice (Aug. 7,
2017), https://www.justice.gov/crt/national-voter-registration-act-1993-
nvra..........................................................................................................3

*Online Voter Registration*, Nat'l Conference of State Legislatures (Dec. 6, 2017), http://www.ncsl.org/research/elections-and-campaigns/electronic-or-online-voter-registration.aspx ..........................................................................7

*Secretary Johnson Testifies in Support of Online Voter Registration*, Mich. Dep't of State (Mar. 8, 2018), https://www.michigan.gov/sos/0,4670,7-127-1640_9150-463026--m_2011_6,00.html ...................................................15

## INTEREST OF AMICI[1]

The National Association of Latino Elected and Appointed Officials ("NALEO") is a 501(c)(4) nonprofit, non-partisan membership organization whose constituency includes over 6,600 Latino elected and appointed officials. NALEO is committed to eliminating racial and ethnic discrimination in elections and ensuring electoral access for all citizens.

Lori Edwards is the Supervisor of Elections for Polk County, Florida, and former President of the Florida State Association of Supervisors of Elections. As Supervisor of Elections—an elected, non-partisan office—Ms. Edwards's responsibilities include administering county, state, and federal elections, maintaining accurate voter rolls, and providing voter registration, campaign finance, and voter turnout information to the public. Ms. Edwards, as a public servant, is committed to ensuring that citizens have access to voter registration, as provided by law.

Clay Lewis Jenkins serves as Dallas County Judge, the chief elected official of Dallas County, Texas. Judge Jenkins chairs the Dallas County Commissioners Court and, among other boards, chairs the County Election Commission. He is

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person other than the amici curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E); *see also* 5th Cir. R. 29.2.

committed to providing fair elections for everyone and believes that democracy works best when all eligible persons register and participate.

## SUMMARY OF THE ARGUMENT

In their brief urging reversal of the district court's grant of summary judgment to Plaintiffs-Appellees, Defendants-Appellants ("Appellants") argue that they have not violated the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq.*, by failing to provide voter registration services during driver's license renewal and change-of-address transactions conducted online. *See* Appellants' Br. at 34-38. They further suggest that, because of state signature collection requirements, the best they can do to comply with Section 5 of the NVRA is what the State of Texas already does: mail a blank voter registration form to individuals who affirmatively indicate that they would like to update their registration when changing their driver's license address online or renewing their registration. *Id*. at 36-37; 44-45. But the experiences of multiple other states illustrate that there are simple, practical, and administrable steps Appellants could take to comply with the NVRA.

Amici write to inform the Court about the voter registration practices that states have implemented to comply with the NVRA. These examples demonstrate that alternative means exist for providing voter registration services alongside online driver's license change-of-address and renewal forms that are far more

effective than Texas's current, noncompliant system.  The experiences of these states also show that providing voter registration *during* online transactions covered under Section 5 of the NVRA offers substantial administrative benefits, increases voter registration, and promotes the accuracy and completeness of voter rolls.  In sum, practical options for complying with the NVRA exist and can easily be implemented in Texas, even without implementing statewide online voter registration.

To assist the Court, this brief will:  (1) provide background on the requirements of the NVRA; (2) identify how other states meet their NVRA obligations and provide voter registration services during online driver's license transactions; and (3) explain specific steps Appellants can take to enhance their own voter registration, change-of-address, and renewal procedures in order to comply with the NVRA.

## BACKGROUND

The NVRA[2] was designed "to establish procedures that will increase the number of eligible citizens who" are registered to vote, "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are

_____

[2] The NVRA applies to 44 states and the District of Columbia; Idaho, Minnesota, New Hampshire, North Dakota, Wisconsin, and Wyoming are exempt from the NVRA because they have either consistently offered Election Day voter registration or had no voter registration requirements on or after August 1, 1994. *See National Voter Registration Act of 1993*, U.S. Dep't of Justice (Aug. 7, 2017), https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.

maintained." 52 U.S.C. § 20501(b); *see also Ass'n of Cmty. for Reform Now v. Fowler*, 178 F.3d 350, 354 (5th Cir. 1999) (citing 52 U.S.C. § 20501(b)). Section 5 of the NVRA helps to accomplish these express purposes by requiring that eligible voters be provided the opportunity to register to vote or update their voter registration information *simultaneously* when they are renewing or changing the address associated with a state-issued driver's license or identification card. *See, e.g.*, 52 U.S.C. §§ 20504(a), (c), (d).

Under Section 5, applicants cannot be required to provide information on the "voter registration application portion of an application for a State motor vehicle driver's license" or renewal application "that duplicates information required in the driver's license portion of the form (other than a second signature or [statement of eligibility requirements and attestation that the requirements are met])." *Id.* § 20504(c); *see also id.* § 20504(a) (providing that "applications" include new and renewal driver's license applications). Section 5 also requires that "[a]ny change of address form submitted in accordance with State law for purposes of State motor vehicle driver's license shall serve as a notification of change of address for voter registration . . . unless the registrant states on the form that the change of address is not for voter registration purposes." *Id.* § 20504(d).

As Congress explained when passing the NVRA in 1993, "between 85 percent and 90 percent of people of voting age nationwide ha[d] driver's licenses

or identification cards issued by State motor vehicle offices." S. Rep. No. 103-6, 5 (1993). Thus, ensuring that eligible voters are provided with registration opportunities when they renew or change the address associated with such documents helps to make sure that voter rolls are regularly updated and accurate. *See id*. at 18 (noting that "[o]ne of the advantages of the [NVRA] is the fact that motor-voter . . . programs are ongoing and that applications and renewals may serve as updating the addresses of registered voters," which reduces the number of individuals who will need to be removed through "purges and list cleaning systems").

Motor vehicle agencies have begun to move more NVRA-covered transactions online and are encouraging license holders to use these services. *See, e.g.*, *Stringer v. Pablos*, -- F. Supp. 3d --, 2018 WL 2193034, *26 (W.D. Tex. May 10, 2018) ("DPS encourages Texans to use its online services to renew their driver's license and change their address because it is easier and more convenient."). Thus, failure to provide voter registration services simultaneously with these online transactions not only violates the plain language of Section 5, but increasingly undermines the NVRA's purposes by inhibiting voter registration applications and updates from making their way to election officials. This creates confusion on Election Day, results in the disenfranchisement of eligible voters, *see id*. at *3-4, and requires states to expend more resources on roll-maintenance

activities to ensure that their registration lists are up to date. *See* S. Rep. No. 103-6, 18; *see also Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 179 (3d Cir. 2017) (noting NVRA requires states to "updat[e] the voting rolls on a continual basis"). In failing to provide required NVRA voter registration services, Appellants are not only violating the Act but are missing a valuable opportunity to advance one of its primary purposes: ensuring accurate and current voter rolls in the State of Texas.

## ARGUMENT

### I. THE EXPERIENCES OF OTHER STATES ILLUSTRATE OPTIONS TO ACCOMPLISH NVRA COMPLIANCE THAT CAN EASILY AND EFFICIENTLY BE IMPLEMENTED, WHILE ACHIEVING SUBSTANTIAL VOTER REGISTRATION BENEFITS.

In their brief on appeal, Appellants take issue with the district court's holding that Appellants violated Section 5 of the NVRA by failing to provide voter registration address updates simultaneously with online driver's license change-of-address and renewal transactions. *See* Appellants' Br. at 35-36. Appellants argue that Texas's current system for online driver's license transactions complies with the NVRA. *See id.* at 34–38. Yet the current system Texas employs—instructing an individual to indicate that they would like a voter registration form, providing a link, and requiring the individual to print the blank application, fill it out, and mail it in, *see id.* at 8–9—does not provide a *simultaneous* voter registration opportunity as Section 5 requires.

Appellants imply that they have no option other than the current system. This ignores the multiple paths taken by other states to help meet NVRA obligations and objectives, such as integrating voter registration services with online driver's license change-of-address and renewal transactions. As set out below, these simple and effective options include: (i) online change-of-address transactions with the relevant state motor vehicle agency ("DMV") that update voter registration information by default; and (ii) automatic, simultaneous updates to state and local voter files following driver's license address changes. These examples should be kept in mind when considering the current appeal.

### A. States Have Adopted Efficient And Effective Practices To Successfully Become NVRA Compliant.

Many states have successfully implemented simple and efficient processes to facilitate online transactions that comply with the NVRA. This includes states that provide for county-based oversight of elections and voter registration and states, like New Jersey and Michigan, that have implemented such systems without providing statewide online voter registration. *See Online Voter Registration*, Nat'l Conference of State Legislatures (Dec. 6, 2017).[3]

---

[3] Available at http://www.ncsl.org/research/elections-and-campaigns/electronic-or-online-voter-registration.aspx.

1. <u>In Georgia And New Jersey, Voter Registration Is Integrated Into The DMV's Online Portal And Does Not Require A Separate Physical Signature.</u>

Georgia fulfills the simultaneous voter registration requirements of the NVRA by enabling participation in voter registration services during online driver's license change-of-address and renewal transactions; no additional signature is required at the time of transaction. New Jersey is implementing a similar system.

Georgia offers online driver's license change-of-address forms[4] that automatically and simultaneously update a citizen's voter registration information.

---

[4] Under the NVRA, "driver's license" is defined to include state identification cards. *See* 52 U.S.C. § 20502(3). In Georgia, transactions to change the address for or renew a driver's license include state identification card address changes and renewals.



**Figure 1. Georgia Department of Driver Services
Change-of-Address Form[5]**

The same is true for Georgia online driver's license renewal forms offered

by the state.

---

[5] This screenshot was provided in response to a Georgia Open Records Act request on August 29, 2018.



**Figure 2.  Georgia Department of Driver Services
License Renewal Form[6]**

As evidenced in the above screenshots, both the online change-of-address

and renewal applications explain that "[a]ll information provided on this form will

be used for voter registration purposes, unless you opt-out."  Figures 1, 2.  The

information provided in the DMV application—such as the citizen's name,

---

[6] This screenshot was provided in response to a Georgia Open Records Act request on August
29, 2018.

address, and date of birth—does not have to be re-entered and is automatically used for voter registration purposes, a key element of NVRA compliance. And the online system does not require an additional signature. To allow the information to be used for voter registration purposes, citizens simply "affirm" that they meet the criteria to register to vote (*i.e.*, citizenship, age, residency, etc.). *Id.* Those who choose to opt out need only check a box. *Id.*

Similarly, New Jersey is in the process of implementing a system that allows citizens to update their voter registration address simultaneously with online driver's license[7] change-of-address transactions via the New Jersey DMV website. *See* P.L. 2018, c.6, 2018 Leg., 218th Sess. (N.J. 2018).[8] Currently, citizens changing their driver's license address online may elect to update their voter registration address, at which point the DMV "will forward this change of address information to the New Jersey Division of Elections and this new address will be changed in [their] records."

---

[7] These services also are available for state identification card address changes.
[8] Available at https://www.njleg.state.nj.us/2018/Bills/A2500/2014_I1.PDF.



**Figure 3. New Jersey Motor Vehicle Commission Online Change-of-Address Form**[9]



**Figure 4. New Jersey Motor Vehicle Commission Online Change-of-Address Form**[10]

To complete the change-of-address application, the citizen simply clicks "submit"; they are not required to provide a signature. *See* Figures 3, 4. Once the new legislation goes into effect, online change-of-address transactions will be used "to update an existing voter registration" automatically—that is, "unless the

---

[9] This screenshot was provided in response to a New Jersey Open Public Records Act request on August 13, 2018.

[10] This screenshot was provided in response to a New Jersey Open Public Records Act request on August 13, 2018.

applicant declines the automatic voter registration." N.J. P.L. 2018, c.6. Citizens'

driver's license and voter registration addresses will be updated simultaneously,

absent an affirmative opt-out, in compliance with the NVRA.

This process, as implemented in Georgia and forthcoming in New Jersey,

ensures that both states comply with the NVRA by providing processes to

simultaneously register or update voter registration through DMV transactions.

2. In Michigan, Simultaneous Change-of-Address Updates Are Satisfied By Automatic Electronic Transmission Of Information From The State Motor Vehicle Agency To Local Election Officials.

Michigan automatically updates a citizen's voter registration address in state

and local election databases when they complete a transaction through the DMV's

online change-of-address system.



**Figure 5. Michigan Department of State DMV
Customer Profile Change of Address[11]**

When a citizen logs into his or her DMV customer profile[12] to initiate a

transaction, the citizen is alerted, in bold font, "Please Note: Changes of address

affect all Secretary of State files associated with your name. For individuals, this

includes your driver's license or state ID card, vehicle records and voter

registration." *Id.* After a citizen submits an online change of address, the DMV

*automatically* updates Michigan's Qualified Voter File database (the "Voter File"),

---

[11] This screenshot was provided in response to a Michigan Freedom of Information Act request
on August 21, 2018.

[12] In Michigan, the Secretary of State acts as the DMV (*i.e.*, state motor vehicle agency). *See id.*

which in turn shares the updated voter registration information with local election officials, provided the voter's signature is already on file through previous voter registration transactions. *See Election Officials' Manual – Chapter 2 Voter Registration*, Mich. Bureau of Elections (Jan. 2017) at 2.[13]

Thus, Michigan voters are able to simultaneously update their address, driver's license, and voter registration without any additional steps, and Michigan satisfies the simultaneous registration requirement of the NVRA by automatically transmitting information from the DMV to local election officials. This is both efficient and helps state and local election officials maintain accurate voter rolls. *See id.* at 4; *see also Secretary Johnson Testifies in Support of Online Voter Registration*, Mich. Dep't of State (Mar. 8, 2018).[14]

## II. TEXAS EASILY CAN COMPLY WITH AND ADVANCE THE OBJECTIVES OF THE NVRA BY ADOPTING PRACTICES SUCCESSFULLY IMPLEMENTED IN OTHER STATES.

As illustrated by the models adopted by other states, Appellants have a variety of proven, simple, and cost-effective mechanisms at their fingertips through which they can offer voter registration and address updates during driver's license change-of-address and renewal transactions conducted through the online platform operated by Texas's motor vehicle agency, the Department of Public Safety

---

[13] Available at https://www.michigan.gov/documents/sos/II_Voter_Registration_265983_7.pdf.
[14] Available at https://www.michigan.gov/sos/0,4670,7-127-1640_9150-463026--m_2011_6,00.html.

("DPS"). These models would also allow Appellants to comply with and advance the objectives of the NVRA, as well as minimize the administrative burdens associated with voter registration.

First, Appellants can integrate opt-out voter registration into the DPS's online change-of-address and renewal portals without requiring a separate physical signature. This method, currently used in Georgia and soon to be used in New Jersey, allows for online driver's license address changes and renewals to trigger simultaneous updates to voter registration information (unless the citizen opts out), without requiring a separate physical signature at the time of the update.

Second, Appellants could follow Michigan's model and automatically and electronically transmit information from DPS to local election officials. This would merely require Appellants to the expand technology that is currently in use for voters who move within a county.

The barriers to implement either of these systems are particularly low in Texas, given the technology the state and local governments already employ. DPS is able to—and currently does, for offline voter registration updates—transmit the electronic signature captured during prior driver's license transactions to the Secretary of State. *See* ROA 3262, 3273 (Deposition of Texas Secretary of State 30(b)(6) representative, Keith Ingram, at 184:12-185:1, 186:5-16 ("Q: But the Secretary of State does know that DPS is able to pull the proper [electronic]

signature to send on for voter registration purposes to the Secretary of State for mail-in change of address forms? A: I'm not arguing with you that this is not possible. That is not my argument at all. My argument is exactly to the contrary. . . . We can agree that it's a possible thing to do."). The same electronic signature—which already is shared with the Secretary of State for paper voter registration purposes—could be used to allow for DPS to provide voter registration as part of its online portal.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in various other briefs presented to the Court, Amici Curiae NALEO, Lori Edwards, and Clay Lewis Jenkins urge the Court to affirm the district court's grant of summary judgment requiring Appellants to modify the online driver's license renewal and change-of-address portal to comply with the requirements of the NVRA, consistent with one or more of the simple, efficient, and proven options described herein.

Dated: September 10, 2018

Respectfully submitted,

/s Chiraag Bains
Chiraag Bains*
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
T: (202) 864-2746

Naila S. Awan
Stuart Naifeh
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
T: (212) 633-1405

/s Niyati Shah
Niyati Shah*
ASIAN AMERICANS ADVANCING
JUSTICE AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
T: (202) 296-2300

/s Davin Rosborough
Sarah Brannon*
Ceridwen Cherry
Davin Rosborough*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
T: (202) 675-2312

/s Edgar Saldivar
Edgar Saldivar
Tommy Buser-Clancy
ACLU FOUNDATION OF TEXAS,
INC.
P.O. Box 8306
Houston, TX 77288-8306
T: (713) 325-7011

* Not admitted in the District of
Columbia; practice limited pursuant to
D.C. App. R. 49(c)(3)

# CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,888 words.

Dated: September 10, 2018

*/s Davin Rosborough*
Davin Rosborough

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing through the Court's

CM/ECF system upon all counsel registered with that system.


Dated: September 10, 2018                          */s Davin Rosborough*
                                                    Davin Rosborough